Argued October 9, reversed November 25, 1924, argued on rehearing February 10, former opinion adhered to and judgment reversed April 7, second petition for rehearing submitted April 28, rehearing denied May 12, 1925.

## W. C. WARNER *v.* SEVERIN SYNNES AND WEST OREGON LUMBER CO.

(230 Pac. 362; 235 Pac. 305.)

**Master and Servant—Contractor Controlling Details of Work Responsible for Injury to Employee.**

1. Where work is in charge of contractor, and owner is concerned only in general result of work, and has no control of details and manner in which work shall be accomplished, contractor alone is responsible under Employers' Liability Act to person in his employ, injured during progress of work.

---

1. Duty under Employers' Liability Acts of owner to servants of contractor, or of principal contractor to servants of subcontractor, as to condition of place or appliance, see note in **L. R. A.** 1917D, 991. See, also, 14 **R. C. L.** 79.

Master and Servant—Inspection Held not to Create "Master and Servant Relation" Between Owner and Employees of Contractor.

2. Owner's right to inspect contractor's work as it progresses, to determine whether it. is being completed according to plans and specifications, does not create relation of master and servant (within Employers' Liability Act) between owner and contractor's employees engaged on such work.

### ON REHEARING.

Pleading—Pleadings Declare and Control Issues to be Determined and Relations Which Parties Bear to Each Other.

3. Pleadings declare and control issues to be determined and relations which parties bear to each other.

Pleading—Allegations of Complaint Held to Admit That Plaintiff was Employee of Contractor and not of Owner of Premises.

4. In action under Employers' Liability Law, complaint alleging that plaintiff was repairing dock as employee of contractor *held* to admit that he was employee of contractor and not of owner of premises.

Master and Servant—Contractor Alone Responsible to Employees for Injuries from Defective Material.

5. Under Employers' Liability Law, contractor alone is responsible to employees for injuries from defective material or other negligence occurring in work which he has undertaken.

Master and Servant—Contractor Under Duty of Inspecting Material Furnished by Owner.

6. Where contract required owner of premises to furnish to contractor material necessary to be used in repair, duty of inspecting such material and seeing that it was proper and safe to be used was that of contractor.

Master and Servant—Contractor Under Duty to Furnish Safe Place and Appliances.

7. Duty to furnish safe place in which to work, and safe appliances with which to work, is that of contractor employing workmen, and not of owner of premises on which they work.

Evidence—Statements of Witnesses Bearing on Who was Injured Workman's Employer Held of No Probative Value.

8. In action by injured workman under Employers' Liability Law, in which pleadings and oral stipulations during trial settled that plaintiff was employed by contractor, statements of witnesses that they would have left work if directed to do so by superintendent of owner of premises were of no probative value as affecting liability of owner of premises.

---

2. See 14 R. C. L. 69.
3. See 21 R. C. L. 603.
7. See 18 R. C. L. 587, 593; 18 R. C. L. 843.

**Master and Servant—Owner not Liable to Employee of Contractor for Injury from Defective Rope.**

9.   Where owner of premises agreed to furnish contractor materials with which to work on premises, and employee of contractor, without authority, direction or knowledge of owner of premises, selected rope and was injured in using it, such owner was not liable under Employers' Liability Law.

**Master and Servant—Employer's Duty Nondelegable.**

10.   Employer has nondelegable duty to furnish employee safe place in which to work, and safe material with which to work, and contractor was not relieved from liability for injury to employee from defective material, because of breach of contract by owner of premises to furnish contractor suitable material for work.

**Master and Servant—Owner's Breach of Contract to Furnish Contractor Suitable Material Held not Proximate Cause of Injury to Contractor's Employee.**

11.   If owner of premises, which agreed to furnish contractor working thereon with materials, furnished rope, it was nondelegable duty of contractor to inspect it, test it and see that it was proper for use, and injury to employee from defect in rope was proximately caused by contractor's breach of duty, and not by owner's breach of contract.

**Master and Servant—Contractor's Employee Making Case Against Employer in Pleadings Cannot, by Testimony, Make Case Against Owner of Premises.**

12.   Contractor's employee, suing for injury, cannot make case against contractor in pleadings, and by impersonal statements in testimony make case against owner of premises for breach of contract to furnish contractor with materials reasonably suitable to work.

**Master and Servant—Servant Lent by Employer to Another Limited to Relief Under Compensation Act.**

13.   Contractor's employee, lent to owner of premises on which work was being done, cannot recover in action at law against such owner for injury in hazardous occupation, as defined by Section 6617, Or. L., but under Sections 6614, 6616, is limited to relief under such act.

---

See (1) 31 **Cyc.** 44 (1926 Anno).   (2) 31 **Cyc.** 87.   (3)   26 **Cyc.** 1567.   (4) 26 **Cyc.** 1570.   (5) 26 **Cyc.** 1568, 1569.   (6) 22 **C. J.** 514.   (7) 26 **Cyc.** 1570.   (8) 26 **Cyc.** 1104.   (9) 26 **Cyc.** 1570.   (10) 26 **Cyc.** 1572.   (11) Workmen's Compensation Acts, **C. J.** 135.
See 26 **Cyc.** 1548, 1549.

From Multnomah: WALTER H. EVANS, Judge.

---

10.   See 18 **R. C. L.** 737.
11.   See 18 **R. C. L.** 561.

Department 1.

REVERSED.

For appellant West Oregon Lumber Co. there was a brief over the names of *Messrs. Wilbur, Beckett & Howell* and *Mr. E. K. Oppenheimer,* with an oral argument by *Mr. H. B. Beckett.*

For respondent there was a brief and oral arguments by *Mr. Bartlett Cole* and *Mr. George F. Alexander.*

BURNETT, J.—In his complaint against the West Oregon Lumber Company, a corporation, and one Severin Synnes, the plaintiff alleges and it is admitted that the defendant Synnes was employed by the company as a contractor to furnish the necessary labor to do repairing, construction and alteration work about the company's manufacturing plant, including the construction of a dock mentioned in the complaint. Averring that on January 24, 1922, he was employed by Synnes to work in repairing the docks of the company located on the Willamette River near Linnton, Oregon, the plaintiff says that he was working on a scaffold about twenty-five feet above the water; that it was resting on a piece of lumber, which was in turn held up and suspended by a rope attached to the piling and that on that day, while engaged in that work, the rope parted and broke, as a result of which the plaintiff fell into the river and sustained certain injuries described. After describing his hurts and averring damages, the complaint alleges in substance that the rope which broke was furnished by the company; that it directed the plaintiff to do the dock work and directed him and his fellow-employees what work to do and how it

should be done. That Synnes instructed the plaintiff and his fellow-employees to do the repair work following the instructions of the company, using the material furnished by it, and that the company was engaged in and had charge of the construction and the repair of the dock, furnished all the material, appliances, equipment and tools used therein, and that the defendant Synnes instructed the plaintiff to use the material, appliances, equipment and tools furnished by the defendant lumber company,

"and plaintiff was working on said dock and repairing the same as an employee and under a contract with defendant Severin Synnes at a daily wage, the said defendant Severin Synnes having employed him to do the repair work at said dock."

The concluding paragraph of the complaint is as follows:

"That defendants and each of them were negligent herein in not furnishing the plaintiff a safe place to work and in requiring and allowing the use of an improper and unsuitable rope in the construction of said scaffold, and in failing to use every device and precaution for the protection of plaintiff, and in failing to test the material furnished in building the scaffold."

After denying some material allegations of the complaint, the defendant company averred in substance that Synnes was an independent contractor in charge of the work, and that the defendant company had nothing to do with the means and methods employed in accomplishing the general result of the construction for which it had contracted. It also charged that the plaintiff was directly in charge of the work in which he was engaged, and that the accident which happened to him was the direct result of his own carelessness in the manner alleged in the complaint.

The defendant Synnes filed an answer on his own behalf, which it is not material to consider because he has not appealed. The cause having been put at issue by a reply traversing the answer of the company, a trial was had resulting in a judgment for the plaintiff, from which the company has appealed.

The principal question for determination is whether the defendant Synnes was a contractor so as to relieve the defendant company from the responsibility of providing the plaintiff a safe place to work. The complaint itself directly avers that Synnes was a contractor in the performance of the work in which the plaintiff was engaged when he was hurt. It is true that the complaint elsewhere says that the company was engaged in and had charge of the construction and repair of said dock. Construing the pleading of the plaintiff most strongly against himself, we might well say that after having alleged that Synnes was a contractor by whom the plaintiff was employed to do the work in question, the averment that the company had charge of the construction would be sham.

However that may be, there is no testimony to support the charge that the company was engaged in and had charge of the repair of the dock. It is true that it furnished all the lumber and nails requisite for the purpose. There is testimony to the effect that one of its own employees had been engaged in the work, but that the company had withdrawn him from that employment, and through the foreman of the defendant Synnes, the plaintiff was directed as the employee of Synnes to proceed with the work. There is no testimony whatever to indicate that any person connected with the company undertook to direct or control him in the duty or

manner in which he should perform the labor. It is said in the complaint that the company furnished the rope which parted, but there is no testimony whatever to indicate that the company or any of its employees knew that the rope was to be used or was used by the plaintiff in the work. The record is utterly devoid of any indication that the company, or any of its agents or servants, designated the rope in question for use on the job. The testimony is to the effect that the piece of lumber 2x6 inches in dimension had been securely nailed to a pile in the dock when the plaintiff, despite the warning of his fellow-workmen, took a piece of rope lying in the roadway on the dock, the strands of which had apparently been used by teamsters in tying bundles of boards, and himself tied the rope to the pile and also around the 2x6, and then with his maul knocked the piece loose, after which he stepped down upon it and a knot in the rope came untied on account of which he was precipitated to the water. No agent or employee of the defendant company assumed any direction of his methods of carrying on the work. So far as appears in the testimony, he was the master of his own actions, and the company was only concerned in the result to be attained. It is averred in the complaint as stated that he was the employee of the contractor and it was agreed throughout the testimony in several instances that he was not in the employ or service of the company. At the close of all the testimony on the part of the plaintiff, the defendant moved for a judgment of nonsuit on the ground that a case had not been proven by the testimony sufficiently to be submitted to the jury, which motion was denied.

1. It is well settled in this jurisdiction that where the work is in charge of a contractor and the party with whom he contracts is concerned only in the general result of the work and has no control of the details and manner in which the work shall be accomplished the contractor alone is responsible to the person in his employ who is injured during the progress of the work. The language of the Employer's Liability Law is that

"generally, all owners, contractors, or subcontractors, and other person having charge of, or responsible for any work involving a risk or danger to the employees or the public,"

shall use care and precaution for the protection and safety of life and limb. The reason for making the contractor alone responsible and exonerating the owner with whom he contracts is that the owner is not the person in charge of the work and so is not responsible for the injury complained of: *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 9 (131 Pac. 314, 134 Pac. 1037); *Tamm* v. *Sauset,* 67 Or. 292 (135 Pac. 868, L. R. A. 1917D, 988); *Woodard* v. *A. F. Coats Lumber Co.,* 97 Or. 302 (191 Pac. 668); *McCauley* v. *Steamship Willamette,* 109 Or. 131 (215 Pac. 892).

2. Of course, the company, in the general nature of things, would be required to direct what it wanted done in the way of repairs, else there could be no subject matter of a contract with the contractor. The mere retention by the owner of the right to inspect work as it progressed for the purpose of determining whether it was completed according to plans and specifications does not operate to create the relation of master and servant between the owner and those engaged on such work; *Pioneer Fireproof Con-*

*struction Co.* v. *Hansen,* 176 Ill. 100 (52 N. E. 17);
*Foster* v. *City of Chicago,* 197 Ill. 264 (64 N. E. 322).

Other errors are assigned, but they are immaterial
in the light of the pleaded character of Synnes as a
contractor and the attendant effect of that admission.

The judgment is reversed, with direction to enter a
judgment of involuntary nonsuit in favor of the de-
fendant, West Oregon Lumber Company.

REVERSED, WITH DIRECTIONS.

McBRIDE, C. J., and BROWN and COSHOW, JJ., concur.

---

Former opinion adhered to on rehearing April 7, 1925.

ON REHEARING.

(235 Pac. 305.)

For appellant there was a brief over the names of
*Messrs. Wilbur, Beckett & Howell* and *Mr. E. K.
Oppenheimer,* with an oral argument by *Mr. H. B.
Beckett.*

For respondent there was a brief and oral argu-
ment by *Mr. Bartlett Cole* and *Mr. George F. Alex-
ander.*

BURNETT, J.—3. Without citing any precedents
in addition to those in his original brief, the plaintiff
and respondent has filed a petition for rehearing,
claiming that the court committed error in holding
that there is no testimony to support the charge
"that the lumber company was engaged in or had
charge of the repair of the dock." It is believed
that this question cannot be decided without reference
to the plaintiff's complaint. It is a theory long in
use in the practice of law that the pleadings declare

and control the issues to be determined and the relations that the parties bear to each other.

4. The plaintiff's complaint avers, and it is admitted:

"That defendant West Oregon Lumber Company employed the defendant Severin Synnes as a contractor to furnish the necessary labor to do such repair, construction and alteration work in and about its said lumbering plant as it required, including the dock construction or repair work hereinafter described.

"That defendant Severin Synnes was at all times herein mentioned engaged as a contractor in a hazardous occupation, to-wit: the repair and construction of buildings, wharves and docks, and working on buildings, wharves and docks, and employing more than five men as an employer, and subject to the Workmen's Compensation Act of the State of Oregon, but said defendant was not operating under said Workmen's Compensation Act but on the contrary had by written notice to the State Industrial Accident Commission rejected said compensation act, beginning July 1, 1918; that the work which plaintiff was doing on the dock, hereinafter described, was a hazardous occupation and dangerous and hazardous work.

"That on the 24th day of January, 1922, plaintiff was employed by defendant Severin Synnes to do certain work in repairing the river docks of the defendant West Oregon Lumber Company located on the Willamette River, near Linnton, Oregon, and on said date plaintiff was engaged in repairing said docks and was working on a scaffold about twenty-five feet and more than twenty-five feet above the water."

It is further said in the complaint that

"plaintiff was working on said dock and repairing the same as an employee and under a contract with defendant Severin Synnes at a daily wage, the said

defendant Severin Synnes having employed him to do the repair work at said dock.''

As between the plaintiff and the defendant West Oregon Lumber Company, the only appellant before us, this certainly fixes beyond question, using the very words of plaintiff's complaint, that Synnes was a contractor

''engaged as a contractor in a hazardous occupation, to wit: the repair and construction of buildings, wharves and docks.''

5. There is no issue on this question and it is not by the mark to refer to testimony which by a constrained construction might indicate that the plaintiff was in the employ of the company. The settled construction of the Employers' Liability Law under such circumstances is laid down by such cases as *Tamm* v. *Sauset,* 67 Or. 292 (135 Pac. 868, L. R. A. 1917D, 988), to the effect that the contractor alone is responsible to his employees for any defective material or other negligence occurring in the progress of the work which the contractor has undertaken. The principle underlying such cases is the familiar one that the owner who may have given plans and specifications and directions about how the work is to be performed is not responsible for injury to the employees of the contractor who undertakes to produce a result in harmony with those directions by his own methods. The contractor is responsible for the details of the work and the manner in which it is to be accomplished, while the owner looks only to the general result. This case of *Tamm* v. *Sauset* has stood as an unreversed decision for more than ten years and is the settled law of this state.

6, 7. Nowhere in his pleadings, or in the evidence for that matter, does the plaintiff pretend in the least

to be the employee of the company. He says in his
complaint and in his testimony that he was employed
by the contractor and paid by the contractor. Much
is said in the testimony about the duty of the com-
pany to furnish the material, but the question to
whom it was to be furnished is utterly ignored in
the discussion. It was part of the contract between
Synnes, the contractor, and the company that the lat-
ter should furnish to Synnes and not to any of his
employees the material necessary to be used. It was
the duty of Synnes and not of the company to inspect
this material and to see that it was proper and safe
to be used. It was Synnes and not the company
that could not delegate this duty to another. It is
hornbook learning that the master is charged with
the nondelegable duty of providing for his employees
a safe place and safe appliances with which to work.
But who is the master in this instance? It is an-
swered by the complaint, which states that Synnes
was the master. Upon him the duty devolved of
furnishing a safe place in which to work and safe
appliances with which to work.

8. On the subject of who was the employer of the
plaintiff, although it is conclusively settled by the
pleadings and by repeated oral stipulations during
the trial, considerable is said in the testimony by
witnesses to the effect that they would have left the
work if they had been directed so to do by the com-
pany's superintendent. That does not affect the case,
for it is mere conjecture incapable of proof. What
might have been, but which was not, is treated in
the opinion of Mr. Justice MOORE in *Hughey* v. *Smith,*
65 Or. 323 (133 Pac. 68), and in the later case of
*Churchill* v. *Meade,* 92 Or. 626 (182 Pac. 368), to
the effect that such testimony is utterly of no import

whatever. Courts deal with facts and not mere vain conjectures.

9. The testimony does not disclose any direction whatever by the company or any of its employees given or communicated to the plaintiff as to how he should accomplish the result of repairing the dock. There is a great deal of impersonal allegation and vague statements about directions what to do, but they amount to no more than can be implied in any specification or plan promulgated by an owner respecting the work to be done. The record is utterly silent that the plaintiff received any directions from anyone to use the particular rope which he claims was defective. He does not say that the company directed him to knock loose the timber upon which he stood after having tied it with the rope in question. Without authority, directions or knowledge of the company he selected the rope, used it as he chose, with the result stated in his complaint, all without knowledge · or direction of the company. In the matter involved it owed him no duty whatever under the allegations of his complaint. Although there may have been, for the sake of argument, a breach of the company's contract with its contractor whereby it agreed to furnish to him the necessary material for the work, yet there was no breach of contract or statutory duty on the part of the company towards the plaintiff within the meaning of *Tamm* v. *Sauset, supra.*

Such cases as *Clayton* v. *Enterprise Electric Co.,* 82 Or. 149 (161 Pac. 411), *Turnidge* v. *Thompson,* 89 Or. 637 (175 Pac. 281), and *Rorvik* v. *North Pac. Lumber Co.,* 99 Or. 58 (190 Pac. 331, 195 Pac. 163), are not in point here. In all those cases the instrumentality of the defendant company which caused the injury was in

active operation and directly affected the plaintiff who in each instance was the employee of a third person, except in the Turnidge case, where the decedent was acting according to his own designs. Rorvik was the captain of a ship upon which lumber was being loaded from the defendant's dock and was standing in a place where he had a right to stand in his connection with the work when the lumber being loaded by the lumber company struck him and knocked him into the water. In *Clayton* v. *Enterprise Electric Co.*, where the plaintiff's decedent was electrocuted by the defendant's wires, they were in active operation carrying a high-tension charge of electricity which caused the death of the decedent. Here all the property of the defendant was inert. No operation of the company involved its use. The company, in reason, is not liable to the employee of a contractor when the latter, without any direction from anyone, assumed to take material which had never been designated for use on the job and so operated with it so as to bring about his own hurt.

10. Having in view the alleged duty of the company to furnish the material, yet a breach of that duty is a breach of its contract with its contractor Synnes. It did not relieve the latter from his duty, as master, to furnish to the plaintiff, his employee, a safe place in which to work and safe material with which to work. Synnes could not delegate that duty to the defendant, and there is no ground whatever for saying that the company assumed any duty towards the plaintiff. Neither is there any testimony whatever to show that the company designated this rope in question for use on that job. The plaintiff, indeed, says:

"we had used this rope for letting down the two by sixes three feet below and then get down on the two by six and nail them to the piling; we had used this same rope, or the same kind of rope, that I used at this time.

"Q. You mean the rope that caused the accident?

"A. Yes, the rope that caused the accident. When I wanted a piece of rope, I didn't know if the ropes that we had been using were laying there or not, but I asked Mr. Johnson for a rope, he being on top of the dock, of course, helping me and he got me this rope and I tied it onto the other end of the two by six, and he held the rope, and he stood on top of the docks and held the rope, and I crossed over, got down on this two by six and nailed it to the piling."

Mr. Johnson, as the testimony shows, was also an employee of Synnes, and while the plaintiff as a witness is very careful to say that they had used the rope, he does not say that the use was by the direction of any employee or officer of the company. The plaintiff further says:

"When Mr. Knapp was foreman, we had tied this scaffolding work up this way in the same manner, with the same or the same kind of rope, and, as far as we knew, and as far as we could find, the best rope that we could find, and, in fact, about all we could find anywhere on the premises, and we had used this rope, in tying up this scaffolding work, when we would have to cut off one piling that was decayed or rotten."

But Mr. Knapp was the foreman for Synnes, according to most of the testimony, and it is not pretended anywhere that he was the employee or the agent of the company. The plaintiff was asked:

"Q. What kind of a rope was this?

"A. Well, in a way, it wasn't rope, but it was made up like rope and answered the same purpose.
114 Or.—30

It was a twine, and, as far as I know, they used it about the mill—I have seen it on rolls there about the mill; as far as I know they used this rope or twine, they would cut it off in pieces, and they would pull strings out of it to tie up the lumber, the plain lumber and the best grades, it seemed, of lumber, is really what the rope was used for, as far as I know.''

11. Every act of negligence charged in the complaint is referable solely to the nondelegable duty of the master to the employee to furnish suitable safe materials with which, and a safe place in which, to work. Beyond all question, under the pleadings, this was a duty incumbent upon Synnes. Upon him as a contractor, and as the employer of the plaintiff, rested the duty of seeing that

''all * * rope * * or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects,'' etc.,

as prescribed in the Employers' Liability Law. The supposed breach of the company's contract with Synnes to furnish material reasonably suitable for the work in hand is not the proximate cause of the plaintiff's injury, which is attributable, as stated, to the duty of the master to furnish a safe place and safe materials.

In *Chambers* v. *Everding & Farrell,* 71 Or. 521 (136 Pac. 885, 143 Pac. 616), is quoted with approval this excerpt from *Brown* v. *Oregon-Washington R. & N. Co.,* 63 Or. 403 (128 Pac. 40):

''Proximate cause is such cause as would probably lead to injury and which has been shown to have led to it. It need not appear from the evidence that the injuries complained of resulted instantly and immediately from the negligence. The law regards the one as the proximate cause of the other, without

regard to the lapse of time, where no other cause intervenes or comes between the negligence charged and the injuries received to contribute to it. There must be nothing to break the causal connection between the alleged negligence and the injuries.''

In *Washington* v. *Baltimore etc. R. Co.*, 17 W. Va. 196, it is said:

''The act or omission, which constitutes negligence, must be such as directly produces as its natural consequence an injury to another. And therefore if a party do an act, which might naturally produce an injury to another as its consequence, but, before any such injury results, a third person does some act or omits to perform some act, * * and this act or omission of such third person is an immediate cause of an injury, which would not have occurred but for his negligence, such third person is responsible for such injury and not the party guilty of the first negligence; for the causal connection between the first act of negligence and the injury is broken by the interposition of the act or omission of the third party.''

See, also, *Vanderflute* v. *Portland Ry., L. & P. Co.*, 103 Or. 398 (205 Pac. 551).

Laying aside for the moment the utter absence of any testimony whatever that the company had submitted the rope in question for use by the plaintiff, or in other words, ''furnished'' the same for his use, yet if it had designated that rope for use in the work, it then became the nondelegable duty of the employer Synnes under the statute to inspect the same, test it and see that it was proper for use. The omission in this respect is the proximate cause of the plaintiff's alleged injury. It is not attributable to the company. There is no testimony that he was compelled or directed to use the rope at all, or to use it in the manner in which he did use it, at least, as affects the company and himself. He cannot

claim damages from the company on any ground stated in the complaint.

12. There is no issue in the pleadings about Synnes being the contractor engaged in the work under consideration; that the plaintiff was his employee and not an employee of the defendant company. There is no issue either on the fact that the duty to furnish the material for the work was one. due to Synnes with whom the company contracted. There is no proof whatever that the company furnished the rope in question, or indicated to or directed the plaintiff to use it in any manner whatever. The plaintiff did not apply to any officer or employee of the company for rope to be used on the occasion in question, but, according to his own testimony, asked Johnson, another employee of Synnes, for a rope, "and he got me this rope." No direction respecting the work is shown to emanate from the company, except what any owner may safely put into plans and specifications for the information of any contractor. The company contracted for a finished result. By the pleadings, as well as by the evidence, it had no control whatever over the details of the work or the manner in which it should be accomplished. As to that, the plaintiff was an independent actor, doing as he pleased, and using what he chose to use. In such cases, neither under the Employers' Liability Law as construed by our former decisions nor under the common law is the company liable to the plaintiff. He cannot make one case in his pleadings, and by impersonal statements in the testimony make another case so as to bind the defendant company.

13. Thus far the case in hand has been treated mainly with reference to the pleadings, on the prin-

ciple that they are exclusive in defining the issues to be determined. The effort of the plaintiff, however, seems to be to establish by the testimony, regardless of the pleadings, that Synnes, his employer, temporarily loaned him to the company to perform certain labor for the latter on its premises. We will consider the subject from that standpoint.

"If an employer loans his servant to another for some special service, such servant, with respect to that special service, becomes the servant of the party to whom his services have been loaned.

"Where a servant in the general employment of one is employed, with his consent, to do work for another, he thereby becomes a servant of the latter. The fact that there is an intermediate party, in whose general employment the person whose acts are in question is engaged, does not prevent the principal from being held liable for the negligence of the subagent or under servant, unless the relation of such intermediate party to the subject matter of the business in which the under servant is engaged is such as to give him exclusive control of the means and manner of its accomplishment, and the exclusive direction of the persons employed therefor. * *

"The test is whether the servant has become subject to the direction and control of the party to whom his services have been temporarily transferred." 1 Bailey on Personal Injuries (2 ed.), § 25.

The excerpt above quoted clearly recognizes the direct liability of a contractor for injuries to his own servant, irrespective of the general employer, but for present purposes we treat the matter as if the plaintiff had been loaned by his employer to the defendant company. On that theory he became the servant of the company.

We read in the complaint:

"The defendant West Oregon Lumber Company owns and operates a sawmill and lumbering plant in the vicinity of Linnton, Oregon."

We ascertain by further perusal of that pleading that the defendant company employed Synnes as a contractor to furnish the necessary labor to do such repair, construction and alteration work in and about its said lumbering plant as it required, including the dock construction or repair work described in the complaint, and that the work which plaintiff was doing on the dock was a hazardous occupation and dangerous and hazardous work. This reference to the complaint is made for the purpose of showing the character of the work which the plaintiff insists was being carried on by the company. What is said about a contractor may be considered as negligible for present purposes.

It is said in Section 6614, Or. L.:

"All persons, firms and corporations engaged as employers in any of the hazardous occupations hereafter specified shall be subject to the provisions of this act."

The remainder of the section gives a privilege to employers to decline the benefits of the Workmen's Compensation Law. By the following section, workmen in the employ of such persons, firm or corporation as are subject to the act may be relieved of the obligations of the act on giving notice. Section 6616 reads thus in part:

"Every workman subject to this act while employed by an employer subject to this act, who, after June 30th next following the taking effect of this act, while so employed sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability, or the bene-

ficiaries as hereinafter defined, of such workman in case the injury results in death, shall be entitled to receive from the industrial accident fund hereby created the sum or sums hereinafter specified and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury or death except as hereinafter specially provided.''

Defining what is meant by hazardous occupations, we find in Section 6617, Or. L., the following to be among those listed:

''(a) Factories, mills and workshops where power-driven machinery is used; * *

''(b) Foundries, blast furnaces, mines, wells, gas works, water works, irrigation works where power-driven machinery is used, reduction works, breweries, wharves, docks, dredges, smelter, powder works, laundries where power-driven machinery is used, quarries, engineering works;

''(d) Logging, lumbering and shipbuilding operations.''

Within the meaning of the Workmen's Compensation Act, therefore, the defendant company at the time of the happening of the accident of which the plaintiff complains was engaged in a hazardous occupation was subject to the provisions of the Workmen's Compensation Act, and was entitled to its privileges. Hence it follows that if the plaintiff was loaned by his employer to the company and thereby became its employee he can claim nothing by this action, because it is said in Section 6616, Or. L., that the benefits specified therein and the right to receive them ''shall be in lieu of all claims against his employer on account of such injury.''

Thus we have a dilemma, one based upon the pleadings declaring that the plaintiff was the em-

ployee of a contractor engaged in the hazardous
occupation of repairing and enlarging the dock in
question, and the other based upon the construction
of the testimony advanced by the plaintiff, the result
of which is to make him the temporary employee of
the company. The first aspect of the situation is
governed by *Tamm* v. *Sauset, supra,* and kindred
cases. The other branch is governed by the Work-
men's Compensation Law, which refers the person
injured solely to the Industrial Accident Fund. The
principle is thus aptly stated by Mr. Justice MOODY
in *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 221
(53 L. Ed. 480, 29 Sup. Ct. Rep. 252, 254, see, also,
Rose's U. S. Notes):

"It sometimes happens that one wishes a certain
work to be done for his benefit and neither has per-
sons in his employ who can do it nor is willing to
take such persons into his general service. He may
then enter into an agreement with another. If that
other furnishes him with men to do the work and
places them under his exclusive control in the per-
formance of it, those men became *pro hac vice* the
servants of him to whom they are furnished. But,
on the other hand, one may prefer to enter into an
agreement with another that that other, for a con-
sideration, shall himself perform the work through
servants of his own selection, retaining the direction
and control of them. In the first case, he to whom
the workmen are furnished is responsible for their
negligence in the conduct of the work, because the
work is his work and they are for the time his work-
men. In the second case, he who agrees to furnish
the completed work through servants over whom he
retains control is responsible for their negligence in
the conduct of it, because, though it is done for the
ultimate benefit of the other, it is still in its doing
his own work."

In neither event can the plaintiff here recover anything from the defendant company. If he was the employee of the contractor, the latter could not delegate to the company the duty of providing for his safety and he must rely on his judgment against the contractor. On the other hand, if he was loaned by his employer to the company and so became the employee of the latter, subject as it was to the Workmen's Compensation Act, he will have to look to that statute for relief. The former opinion is adhered to and the judgment is reversed.

REVERSED. REHEARING DENIED.

McBRIDE, C. J., and BROWN, RAND and BELT, JJ., concur.

COSHOW, J., Dissenting.—This action was instituted to recover damages under the Employers' Liability Act. The plaintiff sustained an injury while working for the defendants under circumstances clearly bringing him within the terms of the Employers' Liability Act. The question involved directly at this time is whether or not the defendant, West Oregon Lumber Company, is liable to the plaintiff. The allegations of the complaint, under which the plaintiff seeks to recover from the defendant and bearing directly upon the issues under consideration, are as follows:

"That defendant West Oregon Lumber Company employed the defendant Severin Synnes as a contractor to furnish the necessary labor to do such repair, construction and alteration work in and about its said lumbering plant as it required, including the dock construction or repair work hereinafter described.

"That defendant Severin Synnes was at all times herein mentioned engaged as a contractor in a hazardous occupation, to-wit: the repair and construction of buildings, wharves and docks, and working on buildings, wharves and docks, and employing more than five men as an employer, and subject to the Workmen's Compensation Act of the State of Oregon, but said defendant was not operating under said Workmen's Compensation Act but on the contrary had by written notice to the State Industrial Accident Commission rejected said compensation act, beginning July 1, 1918; that the work which plaintiff was doing on the. dock, hereinafter described, was a hazardous occupation and dangerous and hazardous work. * *

"That the rope herein described which failed to sustain the scaffold, causing plaintiff's injury, was furnished by the defendant West Oregon Lumber Company, and said defendant lumber company also directed the plaintiff to do said dock work and directed plaintiff and his fellow employees in the work in and about the premises, what work to do, and how it should be done. That the defendant Severin Synnes instructed the plaintiff and his fellow employees to do the repair work in and about said premises and said dock, and to follow the instructions of said lumber company and to use the material furnished by the West Oregon Lumber Company and said West Oregon Lumber Company was engaged in and had charge of the construction and repair of said dock, which was work involving risk and danger to plaintiff and his fellow employees, and furnished all of the materials, appliances, equipment and tools used there except carpenter's small hand tools and defendant Severin Synnes instructed plaintiff to use the materials, appliances, equipment and tools so furnished by defendant lumber company, and plaintiff was working on said dock and repairing the same as an employee and under a contract with defendant Severin Synnes at a daily wage, the said defendant Severin Synnes having employed him to do the repair work at said dock.

"That defendants and each of them were negligent herein in not furnishing the plaintiff a safe place to work and in requiring and allowing the use of an improper and unsuitable rope in the construction of said scaffold, and in failing to use every device and precaution for the protection of plaintiff, and in failing to test the material furnished in building the scaffold."

The defendants answered separately and were represented by different counsel. A verdict was rendered in favor of the plaintiff and against both of the defendants. The defendant, West Oregon Lumber Company only, appeals.

Among other allegations, and in the further and separate answer and affirmative defense, the appellant alleges that the plaintiff was in charge of the gang of men at the place and time of the accident; that the said plaintiff and his fellow-workmen had been instructed to do whatever was necessary to make the place where they were working safe, and to make the said dock safe, and it was the plaintiff's duty at the time of the said accident to build all proper and sufficient scaffolds and to do whatever was necessary to make his position safe.

"That this defendant informed said Synnes and the said plaintiff and his fellow workmen that they were allowed to use any material for the doing of said work and the construction of said scaffolding that might be found about the mill or plant of this said defendant and the right and power of selection of all said materials to be used in said construction was left to the said plaintiff and his fellow workmen and this defendant has been informed and believes that the particular staging that fell was built by the plaintiff himself. * *

"This defendant had nothing to do with the erection of said staging and was only interested in see-

ing that when the work was finally completed by the men employed by the said defendant, Synnes, it was safe, substantial and proper as a completed whole but that in the manner of the construction and in the erection of scaffolds and the details of said work, this answering defendant had nothing to do therewith and that the same had been left to the said plaintiff and his fellow-workmen."

It is further alleged in the said answer that the accident complained of was due to the recklessness, negligence and carelessness of the plaintiff.

"That the said plaintiff was a carpenter and that the said carpenters furnished all of their tools for doing the work in which he was engaged at the time of said accident and that at all times about the work where the plaintiff was working at the time of said accident, there were a sufficient number of nails, spikes, lumber and everything necessary for the purpose of making a safe and substantial staging but that the plaintiff failed to use the same or a sufficient amount thereof to make said staging safe or to make fast the said staging so that it would not fall, although it was the duty of the said plaintiff to make the said staging safe and that as a result of the negligence of the said plaintiff the accident complained of herein happened."

The defendant Synnes alleges in his further and separate answer in part as follows:

"That plaintiff herein, together with the other mechanics and laborers supplied by defendant, Severin Synnes, to the West Oregon Lumber Company at the time when the accident occurred complained of in plaintiff's amended complaint were each and all instructed by defendant, Severin Synnes, to report at the plant of the West Oregon Lumber Company to the superintendent or head millwright of said company and there learn from said superintendent or head millwright what work was required and the

manner of performing the same and that said West Oregon Lumber Company did supply all material and appliances necessary for the performance of any and all work to be done.

"That plaintiff, W. C. Warner, was well familiar with the plant of the West Oregon Lumber Company and the manner of directing the work by the representatives of said West Oregon Lumber Company, said Warner having been employed by said Synnes and said Lumber Company in a similar manner and under the same plan a greater number of times prior to the month of January, 1922, and that such previous employment was similar and on the same terms as the employment during January, 1922.

"That defendant, Severin Synnes, supplied said labor to said West Oregon Lumber Company in the month of January, 1922, with the understanding that said West Oregon Lumber Company was to supply all material, appliances and paraphernalia necessary for the work required to be done and the said Severin Synnes was not required to be on, and was not on, said job on January, 1922, did not supervise or direct the work performed by plaintiff or the other men supplied to the West Oregon Lumber Company in January, 1922, and did not instruct any of his workmen or plaintiff herein what to do or how to perform any of the work required and had nothing to do with the work performed by plaintiff for said West Oregon Lumber Company, except to procure plaintiff to do said work and paying plaintiff therefor, all of which facts were well known and understood by plaintiff long before and at the time of the alleged happening of the accident complained of in plaintiff's complaint.

"That plaintiff and his co-employees engaged by Synnes knew that defendant, Severin Synnes, was not contracting for said work in January, 1922, but was merely supplying the hands for the performance of any work required to be done by the West Oregon Lumber Company at its plant near Linnton, Oregon, and that said company was to direct the workmen

and was to supply all material needed to execute any
and all work required and that defendant, Severin
Synnes, was not to supervise, superintend, direct or
control said workmen or work, and that he did not
act in any supervisory or other capacity in any of
the work performed at the time or prior to the
occurrence of the accident complained of in plaintiff's
complaint.''

The defendant, Synnes, further alleges that the
plaintiff was an experienced workman, understood the
construction of scaffolds, and charges the accident to
the negligence of the plaintiff in the manner of con-
structing the scaffolding or staging, which fell, caus-
ing the accident complained of.

The essence of the controversy is the identity of
the party or parties responsible to the plaintiff for
the defective material used by him, resulting in the
accident he suffered.

The question as to whose duty it was to furnish
the material necessary for doing the work for the
defendant was one of the main issues tried in the
Circuit Court. Both defendants sought to place the
blame for the accident on the plaintiff. The de-
fendant, Synnes, alleges in his affirmative answer and
deduces evidence supporting his allegations to the
effect that his sole obligation, in his contract with
the defendant lumber company, was to furnish com-
petent carpenters to do the work under construc-
tion by the company. The defendant lumber com-
pany contends that it contracted with the defendant,
Synnes, to accomplish a certain work. The defend-
ant lumber company substantially admits that it
undertook to furnish the material for that work. It
contends that the material it undertook to furnish
was not to be furnished directly to the workmen,
but to their employer, the defendant Synnes. This

controversy was submitted to the jury and by it resolved in favor of the plaintiff. The jury's verdict in effect, in the light of the pleadings and the evidence, is that the defendant lumber company had immediate charge and supervision of the work; that the plaintiff was an employee of the defendant Synnes; that it was the duty of the defendant lumber company to supply and test the material used in the work, and that having failed to supply proper and suitable material, it was liable to the plaintiff.

One of the incidental matters of controversy was as to the capacity of one Knapp, a coemployee of the plaintiff. The plaintiff testified that Knapp was foreman of the workmen and had charge of them during the progress of the work. Knapp himself, as a witness for the plaintiff, partially corroborates this testimony. He testified that he was never appointed foreman by Synnes and received no extra compensation for the added responsibility of being foreman. The officers of the defendant lumber company testified that Knapp was the foreman of the men employed by Synnes to do the work for the company. The defendant Synnes positively denied that Knapp was his foreman. One of the jurors, in the course of questions propounded to the witness Knapp regarding his capacity, asked him directly if he received any compensation for serving as foreman, to which question the witness Knapp said he did not. The verdict of the jury, in effect, fixes the capacity of Knapp either as an ordinary employee of the plaintiff, or as foreman by virtue of his recognition, if not by appointment, as such by the defendant lumber company. The evidence in this behalf is, in part, as follows:

Mr. Knapp, being recalled as a witness in behalf of the defendant Synnes, testified as follows:

"Q. While there (referring to the place where the accident occurred) is it a fact or not a fact that men were used out of Synnes' men without any application to you? A. Yes, sir, I have known it, yes, sir.

"Q. Did you or the mill company's representative * * order Warner here to go on this job where the accident happened? A. It was the company.

"Q. The company's men? A. Yes.

"Q. Did they ask leave of you? A. They did for Warner, yes, sir; that is all.

"Q. How? A. They did for Mr. Warner.

"Q. What did they say to you about it? A. Well, they said—that is, the superintendent of the mill there, he said Mr. Kingsley wanted him over there because he could get along better.

"Q. He wanted Warner over there? A. Yes, sir.

"Q. Now, how did Johnson get over on that job? A. I don't know.

"Q. Did anybody make application for you to put Johnson on that scaffold? A. No, sir."

Johnson was working with plaintiff when the injury was received by him.

On cross-examination, on behalf of the defendant lumber company, this witness further testified:

"Q. You say someone, the superintendent of the mill, asked you or said that Mr. Kingsley would like to have Mr. Warner? A. Yes.

"Q. How did he come to speak to you about it? A. Well, I don't know. I don't know. * *

"Q. How do you suppose they came to tell you about it? A. Well, it seemed as though they used me as a kind of a foreman, that is all. I never had any instructions as far as being a foreman around there, as far as that, but it seems as though I understood the work and they used me that way. I didn't have no orders from either side, but—

"A Juror: May I ask him a question?

"The Court: Certainly.

"The Juror: Are foremen paid more than the regular workmen? A. Well, supposed to be.

"The Juror: Did you get more pay than the other men? A. I don't think so. I don't know. I didn't know what they were getting.

"The Juror: You don't know what you got, and you don't know what they got?

"A. No, I don't know what they were getting.

"The Juror: But it is the custom for being paid extra for added responsibility for being foreman? A. I suppose so, but I don't think they paid me any. * *

"The Court: What were your duties there, Mr. Knapp? A. Well, I used my tools the same as the rest of the men.

"The Court: Did you keep track of the time of the men? A. No, sir.

"The Court: Or their rate of pay—A. (Interrupting.) I supposed every—I think everyone kept their own time, the best I know.

"The Court: Did you discharge anybody? A. No, sir.

"The Court: Did you hire anybody? A. No, sir.

"The Court: From whom did you get your instructions? A. I got it from the mill, from the mill man there, the one that was in charge."

On further cross-examination in behalf of the defendant lumber company, Mr. Knapp testified as follows:

"Q. Why did Mr. Warner say when he came out on the job that he reported to you? A. I don't know.

"Q. In other words—let's get right down to it—do you want to tell this jury that you don't think you were the foreman out there of the Synnes crew? Now, were you, or were you not? Let's get right down to cases. * *

114 Or.—31

"A. Yes, but as far as having orders from anybody, either one of those parties, I never had no orders to take charge of these men at all but, as I say, I understood the work very well, and they seemed to like my work, and all of that, and they looked to me to kind of go ahead, and that is all the instructions I ever had.

"A Juror: Well, you worked there, did you? A. Yes, I worked, I say I did; yes, sir.

The defendant Synnes as a witness in his own behalf, on direct examination testified, in part, as follows:

"Q. What was the contract as regarding your supervising the performance of your men? A. There was no contract to supervise the work.

"Q. Well, was there a contract not to supervise? A. There was a contract—no, not to supervise it; no there wasn't it either way.

"Q. It wasn't either way? A. Well, there was no contract.

"Q. Well, was there anything said by Mr. Kingsley—did Mr. Kinglsey say anything to you regarding our supervising the work? A. No.

"Q. What was you to do with these men? A. Send them to the mill and report to someone at the mill who were in authority by the mill.

"Q. Who was in authority at the mill? A. I don't know who was superintendent at this time, but in many other times I can recall special times when they were—I were told to send men and report to Charlie Traffe, which testified her , or to some other man in charge at the West Oregon Lumber Comany.

"Q. But at this time you were instructed to have them report to the superintendent? A. At the superintendent of the mill. * *

"Q. And did you have any agreement or arrangement with Mr. Kingsley as to providing any heavy tools, sheaves or blocks, or any other of heavy tools outside of the carpenter tools that the men had themselves? A. No agreement that he testified. * *

"Q. Well, did you ever have any—or make any request of Mr. Kinglsey while making this contract for him to loan you some tools for his own work? A. No, sir.

"Q. Were you on this job at all during the month of January in a supervisory capacity? A. Never.

"Q. Did you have any direction or control over the men? A. No.

"Q. Did you designate to Mr. Kingsley, the superintendent of the mill, the millwright, or anyone else, any man representing you as foreman on the job? A. No, it was asked of me to supply men according to that work which was to be done that is all.

"Q. Now, did you have anybody there representing you as foreman to conduct this work? A. No; not day work.

"Mr. Beckett: What was it? A. Not day work, or Force Account. * *

"Q. Did you have any conversation with Mr. Kinglsey or his representative about who was or was not foreman of the Synnes men? A. No. * *

"Q. I think you have testified already that you were not on the job and had nothing to do with the (pauses) to your knowledge were any of the men hired by you for the mill company discharged by the mill company without your knowledge—

"A. (Interrupting.) Yes.

"Q. (Continuing.)   —or instruction? A. Yes.

"Q. State to the jury how that discharge came about, and how you learned of it? A. One man by the name of George Hermann came to me and told me he was fired, and I asked him who fired him, and he said Kingsley, and I asked him why, because I thought he was a good man, and he says because he said he was—he thought he was slow, or didn't know, rather.

"Q. Did you have any conversation with Mr. Kingsley regarding this man? A. I had conversation with him after this time. I asked him about it and I made reference to this man as being one of my best men. I spoke to Mr. Kingsley about it, that

he was one of my best men, and, well, he said he didn't want him, was the answer.''

Mr. Synnes further testified on cross-examination on behalf of the defendant lumber company as follows:

''Q. Well, if you didn't have anything to do with these men, do you want to convey the impression to the jury that these men were not working for you; is that what you are trying to do? A. I supplied the men to the West Oregon Lumber Company. * *

''Q. Well, were they or were they not working for you? * * A. My idea is—if I didn't have the idea they were working for the West Oregon Lumber Company I wouldn't be here.

''Q. You don't think they were working for you? A. No.

''Q. Why did you pay them? A. Because there was an agreement that I should have so much, that I should have those men down there at day work, but they were absolutely in charge of the West Oregon Lumber Company. * *

''Q. You were carrying on contracts other places in the city at this time, weren't you? A. I think I was. * *

''Q. And what do you think whether Mr. Knapp was the foreman out there? What is your idea about it? Do you think he was the foreman of these men or not? A. The only reason I know of why Knapp was down there was this, that Charley Traffe asked me if he couldn't have Mr. Knapp down there. Mr. Charley Traffe asked me if he could not have Knapp,—he was a good man.

''Q. What did you say? A. I told him he could have him.

''Q. Was there anything about having him as foreman? A. There was no mention about foreman, not a mention of a word about foreman. He just asked me if he couldn't have Charley (*sic*) Knapp.

''Q. Didn't you say anything about having charge of the work? A. No.

"Q. Didn't use the word 'foreman' or say anything about having charge of the work? A. No; not a word of it mentioned.

"Q. So you say that you had—you employed these men and sent them down there, and you paid them, and yet you say that you had no supervision over them, no control over them, no foreman in charge, and no power to discharge them? That is what I understand you to say? A. Well, I had no power over them so long as they were under the West Oregon supervision.

"Q. Well, just answer that question. Is that true or not? Read it to him again, Mr. Reporter. ` * A. Yes.

"The Court: If you want to make any explanation, go ahead and make it. A. For this reason, that I wasn't there; I didn't go there. I sent the men which they asked for, and if they was through they told me that they didn't need them any more, or told some one else, and the men came in without me telling them anything; the men came in in bunches without me telling them anything. They were just laid off."

The witness Synnes, on cross-examination in behalf of the plaintiff, testified as follows:

"Q. Mr. Synnes, you had the right to fire these men that went down to the—that you sent down to the West Oregon Lumber Company mill, didn't you, or take them off and put them on other work that you were doing? A. If the men should be removed from the work I would ask Kingsley for permission to take them away.

"Q. And did you take some of them away during the month of January, 1922. A. No, they were sent home by the company.

"Q. I mean the men that you sent down to the West Oregon Lumber Company. A. Yes.

"Q. Did you take any of them off of that job and put them on other work of yours? A. No; most of them was laid off.

"Q. Most of them were laid off? A. Yes, some men I retained on contract, work which I had otherwise. * *

"Q. Did Mr. Kingsley have the right to fire them down there? A. He did. He did lay them off,— either him or his authority. * *

"The Court: How did you determine what to pay these men? A. Well, generally, as most of those men has been working for me previous to this time, I concluded about what they were worth.

"The Court: Well, that is the rate of pay you agreed with the men upon, but how did you know how much time they put in? A. They ring the clock at the West Oregon Lumber Company at this particular time; they were ringing the clock down there.

"The Court: Well, counsel asked you when you went down there to get your divvy if you got some sort of a sheet—is that it—from the West Oregon Lumber Company. What was your question there, Mr. Beckett, about that?

"Mr. Beckett: I don't know. He said the men, though, kept their own time. A. At this particular time it was kept by a clock, ringing in on the clock at the West Oregon Lumber Company.

"The Court: Well, had you made a different contract for this work than for other work that you had been doing there during the years past? A. No, no other, no special contract, any more than the same thing was going on for years, the same work. The same to-day,—to-day, the same to-day as it was ten years ago.

"The Court: And did you submit a bill to the company for the wages of the men or did they tell you what was coming to them? A. There was times when I submitted a bill to them.

"The Court: I mean in this particular case? A. In this particular case I did not submit a bill, because the time was rung in, and I didn't have anything to do with it. * *

"Q. (By Mr. Alexander.) Did the lumber company, then, furnish you with a statement as to the time the different men had worked? A. Yes.

"Q. And paid you accordingly, and you in turn paid them? A. Well, they paid me; they paid me, and I paid the men."

The capacity in which said Knapp was working, at the time of the accident, is material only in determining who was in charge of the men at the time of the accident. It is alleged in the complaint that the plaintiff and his coemployees were directed by their employer Synnes to do the repair work of the defendant lumber company; that the defendant lumber company had immediate charge and supervision of the work; that the employees were to receive and take their orders from the officers of the defendant lumber company, and that the defendant lumber company was to furnish the appliances and material.

It is the settled law of this state that the owner or contractor cannot delegate his duty to furnish safe and suitable appliances and safe and suitable places to work: *Askatin* v. *McInnis & Reed Co.,* 67 Or. 320, 323, 324 (135 Pac. 322). If it was the duty of the defendant lumber company to furnish to the employees of Synnes, while working for the defendant lumber company, the necessary material and appliances for accomplishing the work, that duty could not be delegated either to Knapp or to Synnes by the defendant lumber company: *Cauldwell* v. *Bingham,* 84 Or. 258, 266, 267 (155 Pac. 190, 163 Pac. 827).

There is evidence to support the allegation in the complaint and in the answer of the defendant Synnes that the defendant lumber company exercised charge and supervision of the work. There is evidence that the plaintiff himself was chosen by an officer of the

defendant lumber company for the particular work in which the plaintiff was injured; that the plaintiff was placed at that work by request of the defendant lumber company made to the plaintiff through the witness Knapp. There is evidence that the defendant lumber company, through its proper officers, at other times, directed the workmen what to do, and went so far as to discharge one of the employees of the defendant Synnes. The defendant Synnes testified that the man discharged was one of his best workmen; that he inquired of the officer of the defendant lumber company, who discharged said workman, why he discharged him, and was told that he (the said officer) did not want him. In the light of this testimony under the issues framed by the pleadings the writer believes that the liability of the defendant lumber company was a question of fact to be determined by the jury. The theory of the plaintiff is that the defendant lumber company is liable to him, not because he was an employee of the defendant lumber company, but because he was working for the benefit of that company as the owner under terms of employment whereby it was the duty of the company to furnish safe appliances and suitable material for the work.

It was stipulated near the close of the trial that the plaintiff was not an employee of the defendant lumber company so as to bring him within the provisions of the Workmen's Compensation Act. This question arose during the course of the trial and the defendant lumber company requested permission to file an amended answer pleading the Workmen's Compensation Act as a defense. That motion was renewed near the close of the taking of testimony, and it was stipulated that the plaintiff was the

employee of the defendant Synnes and not an employee of the defendant lumber company. If, therefore, it was necessary for the plaintiff to have been an employee of the defendant lumber company in a general sense in order to recover in this action, this stipulation would preclude his recovery from the defendant lumber company under the provisions of the Employers' Liability Act.

But this court has repeatedly held that an injured employee may recover from the owner for an injury received in the course of his employment as a result of the owner failing to comply with the provisions of the Employers' Liability Act. This court, in the case of *Saylor* v. *Enterprise Electric Co.,* 106 Or. 421, 436 (212 Pac. 477), heard in bank, in a well-considered opinion by Mr. Justice HARRIS, uses this language:

"In *Rorvik* v. *North Pacific Lumber Co.,* 99 Or. 58 (190 Pac. 331, 195 Pac. 163), we ruled that where an employee of one corporation is injured or killed by the failure of another corporation employer, although not an employer of the one injured or killed, to use the precaution required by the Employers' Liability Act, the employee or his beneficiary could maintain an action against the culpable employer under the provisions of the Employers' Liability Act. The opinion in *Clayton* v. *Enterprise Electric Co.,* 82 Or. 149 (161 Pac. 411), is authority for the same doctrine; and a statement in *Turnidge* v. *Thompson,* 89 Or. 637, 653 (175 Pac. 281), is an approval of the doctrine."

This rule has become the settled law of the state. It follows, therefore, necessarily, that the plaintiff is not precluded from recovering from the defendant lumber company merely or solely because he was not its employee. We also opine that the fact that

the defendant was an independent contractor of itself does not necessarily preclude the plaintiff from recovering from the defendant lumber company in this action. We are not now concerned with the liability of the defendant Synnes. He has not appealed. And for that reason his liability is fixed. Whether or not the defendant lumber company is liable depends in a large measure upon its contract with the defendant Synnes. If by the terms by which the work was being done at the time of the injury it became the duty of the defendant lumber company to direct the manner of doing the work, to exercise charge and supervision over the workmen, and to provide the material with which the men were to work, then the company would be liable, notwithstanding the defendant Synnes may have been an independent contractor for the purpose of supplying the laborers. Our understanding of the Employers' Liability Act is that the person, whether artificial or natural, whose duty it is to supply the material and exercise supervision over the workmen, is responsible for the material furnished. The statute was intended to protect workmen engaged in hazardous occupations. Its provisions are broad enough to include every person whose duty it is to supply the material with which the men perform their work or use in accomplishing the result desired. The person who has immediate charge and supervision of the work must provide a safe place for the workmen to work. The language of the statute is:

"All owners, contractors, subcontractors, corporations or persons whatsoever, engaged in the construction, repairing, alteration, * * * of any building * * or other structure * * shall see that all metal, wood, rope, * * or other material whatever, shall be carefully selected and inspected and tested so as to

detect any defects * * : and generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving risk or danger to the employees * * shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, * * and without regard to the additional cost of suitable material or safety appliance and devices.'' Section 6785, Or. L.

Upon the person having the immediate charge and supervision of the work and whose duty it was to supply the material for the work, rests the obligation of complying with this statute. If it was the duty of the independent contractor to exercise control and supervise the work and supply the material used in accomplishing the result desired, then, the independent contractor alone would be responsible to a workman injured by a violation of the statute. On the contrary, if by the terms of employment, or the provisions of the contract, it was the duty of the owner to supervise the means of producing the result, to exercise control of the workmen and supply material used in attaining the result, then, the owner is liable to any workman injured by a violation of the statute. We believe that the decisions of this court have construed the Employers' Liability Act so as to place the responsibility for injury, resulting in a violation of the act, upon the person whose duty it was to perform the things commanded by the act. *Tamm* v. *Sauset,* 67 Or. 292 (135 Pac. 868, L. R. A. 1917D, 988), enunciates that rule in the following language in page 297 of the official report:

''To take up the case in hand, the Employers' Liability Act particularizes the class, such as owner's, contractors, subcontractors, corporations or persons

whatsoever *engaged* in certain activities shall see that the materials employed and the appliances used are carefully selected, inspected and tested, so as to detect any defects. The evident intent of the statute was to hold responsible, for personal injuries to an employee, only that member of the class enumerated who was *engaged* in the undertaking or enterprise embraced in the statute whereby the injury occurred. To conceive otherwise would be going wide of the rule established by this court in the case of *Lawton* v. *Morgan, Fliedner & Boyce*, 66 Or. 292 (131 Pac. 314, 134 Pac. 1037). The initiative act does fix a high standard of care, a violation of which is negligence *per se,* but lays the care to the door of the person having the work in charge, and in consequence thereof the application of the enactment must be circumscribed to that particular source from which or from whom authority and control of the instrumentalities and individuals emanate."

In the *Tamm* v. *Sauset* case, Sauset was the principal contractor and had sublet a part of the work to other parties. The other parties had immediate charge of the work and were in the actual operation of the appliances when the plaintiff Tamm received his injury. Sauset did not interfere in any way with the operation being conducted by his subcontractor. For that reason Sauset was not liable for injuries resulting from improper exercise of care by the subcontractor. As stated in the excerpt in the opinion last cited, Sauset was not liable because he owed no duty to the plaintiff. With regard to the work in which plaintiff was engaged while injured, the subcontractor owed that duty to the plaintiff. To the same effect is the case of *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037). The same principle is announced in *Harvey* v. *Corbett,* 77 Or. 51 (150 Pac. 263). In the last-

mentioned case the defense of an independent contractor was pleaded. It was there held that the alleged independent contractor was an agent and for that reason the defendant Corbett was held liable for the accident. It was so ruled because of the provisions of the contract between the defendant Corbett and the Hurley-Mason Company: See, also, *Fisher* v. *Portland Ry., L. & P. Co.*, 74 Or. 229, 233, 235 (137 Pac. 763, 143 Pac. 992, 145 Pac. 277).

The liability of the defendant lumber company in the instant case depends largely, if not altogether, upon the terms of the contract between it and its codefendant. The contract was not in writing. It was very indefinite. The evidence concerning its terms is conflicting. The allegations of the complaint, in part, directly bearing upon the issue under discussion, is as follows:

"That the defendant Severin Synnes instructed the plaintiff and his fellow employees to do the repair work in and about said premises and said dock, and to follow the instructions of said lumber company and to use the material furnished by the West Oregon Lumber Company and said West Oregon Lumber Company *was engaged in and had charge of the construction and repair of said dock, * * and furnished all of the materials, appliances, equipment and tools used there* except carpenter's small hand tools and defendant Severin Synnes instructed plaintiff to use the materials, appliances, equipment and tools so furnished by defendant lumber company, and plaintiff was working on said dock and repairing the same as an employee and under a contract with defendant Severin Synnes at a daily wage, the said defendant Severin Synnes having employed him to do the repair work at said dock."

It therefore clearly appears that under the rule announced in *Tamm* v. *Sauset,* above, the defendant

lumber company, being engaged in the work, having immediate charge thereof, and having furnished the material and appliances, is clearly liable for any negligence of either commission or omission on its part.

There was evidence adduced substantially supporting the allegations of the complaint quoted above.

The further and separate answer of the defendant lumber company alleges:

"That this defendant informed said Synnes and the said plaintiff and his fellow workmen that they were allowed to use any material for the doing of said work and the construction of said scaffolding that might be found about the mill or plant of this said defendant and the right and power of selection of all of said materials to be used in said construction was left to the said plaintiff and his fellow workmen and this defendant has been informed and believes that the particular staging fell, referred to in the complaint herein, was built by the plaintiff himself, * * "

The defendant Severin Synnes in his affirmative and separate answer alleges:

"That defendant, Severin Synnes, supplied said labor to said West Oregon Lumber Company in the month of January, 1922, with the understanding that said West Oregon Lumber Company was to supply all material, appliances and paraphernalia necessary for the work required to be done and the said Severin Synnes was not required to be on, and was not on, said job on January, 1922, did not supervise or direct the work performed by plaintiff and the other men. * * "

In view of the allegations of the party plaintiff and parties defendant, the fact that the contract between the defendant lumber company and Synnes was not in writing, and the conflicting testimony re-

garding the terms of that contract, the question of the liability of the defendant was one of fact to be submitted to and determined by the jury. If it was the duty of the defendant lumber company to supply the material and appliances and to supervise and control, not only the work as to its result, but the manner of its performance, then, it was liable for any neglect in performing that duty.

"It is frequently asserted that whether the relation of master and servant exists in a given case is usually a question of fact. Where the contract is oral and the evidence is conflicting, or where the written contract has become modified by the practice under it, the question as to what relation exists is for the jury under proper instructions. If the contract is oral, and if more than one inference can fairly be drawn from the evidence, the question should go to the jury whether the relation is that of employer and independent contractor or that of master and servant. If, for example, the evidence does not show clearly that A's servant has been put, for the time being, under the control of B, a question of fact for the jury, as to whether A or B is the master, seems to be presented. In an English case, the question whether the defendant employer was liable was held properly submitted to the jury in the case of unloading a ship. Where the contract, as related by witnesses, is so incomplete as to lead to the conclusion that it was a mere subterfuge to avoid liability, or an afterthought on the part of the witness, it is properly submitted to the jury." Moll, Independent Contractors' and Employers' Liability, p. 62, § 29; 26 Cyc. 1576, par. 7; 1 Labatt's Master & Servant (2 ed.), pp. 170, 175, Section 52, notes 10 and 11, p. 174; *Dickerson* v. *Eastern & Western Lumber Co.*, 79 Or. 281 (155 Pac. 175).

If it was the duty of the defendant lumber company to furnish the appliances, it could not delegate

that duty even to the plaintiff himself or to Synnes: *Malloy* v. *Marshall-Wells Hardware Co.,* 90 Or. 303 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589). From page 315 of the official report is taken this language:

"It is contended that plaintiff himself should have constructed the guard-rail. There is evidence that he could have secured from the defendant corporation the materials required for such construction, but there is no evidence that it was his duty so to do. Under the statute this duty devolved on Marshall-Wells Hardware Company. This duty was absolute and nondelegable. It would still have been obligatory on the corporation even if plaintiff had been ordered to construct the guard-rail and had agreed to do so."

The Employer's Liability Act was enacted for the benefit of the workmen. It is remedial and should be liberally construed: *Blair* v. *Western Cedar Co.,* 75 Or. 276, 280, 146 Pac. 480). One of its definite purposes is to fix, with certainty, the person responsible for defective appliances. The statute itself would be rendered very largely nugatory if an owner could relieve himself of performing his duty to furnish appliances and material to workmen under his supervision in work for his benefit by saying: "There are certain appliances or material. Help yourself." That is very nearly the attitude of the defendant lumber company in the instant case. Its principal defense is that the plaintiff was the employee of an independent contractor, and it is not liable because it was the duty of the independent contractor to supply the appliance. At the same time, it alleges that it informed plaintiff and his employer that they could use material and appliances belonging to it. On the other hand, both the plaintiff and the defendant Synnes allege and adduce

evidence to support the allegation, that by the terms of the oral contract between the defendant lumber company and Synnes, the lumber company agreed to furnish the appliances, supply the material that it did, and engage directly in the construction work. At the same time the defendant lumber company attempts to delegate its duty, to select and test the appliance, to the plaintiff and defendant Synnes.

In the state of the record the question of whose duty it was to furnish the rope used and to test it, is a question of fact to be determined by the jury. The jury having determined that question in favor of the plaintiff, this court is bound by the result. The fundamental law prohibits this court from retrying the question of fact.

The writer accepts, as settled law, the principle that an owner who lets a contract to an independent contractor for the construction or repair of a building and the contractor supervises the work, furnishes the material and is responsible for the result only, the owner is not liable for an accident resulting from defective appliance furnished by the contractor and causing injury to an employee of the independent contractor. It has also been held in a number of cases that, where the owner himself reserves the right to control the work, not only as to the general result but also as to the manner of doing the work, he is in a large degree the employer and liable for injuries resulting to the employees of the general contractor resulting from negligence attributable to the employer. There is no good or sound reason why an independent contractor and the owner cannot define and limit the duties and obligations of each other in a contract for construction or repairs. Both parties are bound by a contract between them

114 Or.—32

defining their several duties in construction or repair work. In such a case the contractor's employees, injured as a result of negligence on the part of the owner in executing such contract, are entitled to recover damages from the owner. It is the writer's opinion that the plaintiff is within the protection of that principle of law; that the jury's verdict placed the duty of furnishing the rope, the breaking of which caused the injury to plaintiff upon the defendant lumber company, and that the defendant lumber company was negligent in this, that it did not inspect the rope or supply a proper rope to the plaintiff. It undertakes to excuse itself by saying that it had a strong rope and the defendant was authorized to help himself, but the law requires the owner or employer to have seen that the proper appliance was furnished. There is no pretense that the defendant lumber company performed that duty.

The principle of law relied upon by the writer is neither novel nor strange. It is enunciated by such standard text-writers as Labatt, Bailey and others.

"Ordinarily the contractee is under no obligation to furnish any appliances to the contractor, except as expressly *provided for in the contract*. But he is liable to the servants of a contractor for injuries received by them through the negligence of such contractee in not providing proper appliances, where as between himself and the contractor he is to furnish the appliances for the contractor's use.

"If the apparatus used belongs to the contractee, the latter is responsible for defects therein resulting in injuries to servants of the contractor the same as if the servants were the servants of the contractee." Bailey, Personal Injuries (2 ed.), 130.

"From evidence which shows that the servant of a contractor was, in the given instance, controlled as

to the details of his work by the principal employer, one or other of two inferences may be drawn, viz.:

"(1) That, although the servant was in the general employment of the contractor, he had, as a result of some arrangement between his master and the principal employer, become the special servant of the latter for the purpose of the work in hand, at the time when the injury in suit was received. * *

"(2) That by virtue of the original agreement between the principal employer and the contractor the former acquired the right of giving directions to the servants of the latter with regard to the manner in which the work was to be done. * * Thus, the principal employer is responsible * * to a servant of the contractor, who grounds his claim upon the principal employer's nonperformance of one of those nondelegable duties which the law imposes on a master for the protection of his servants." 1 Labatt's Master & Servant (2 ed.), 123, 124, § 40.

"Whether the plaintiff, although regularly working for another person, was, at the time of the accident, under the control of the defendant in such a sense as to be an employee *ad hanc vicem,* and therefore entitled to hold the defendant accountable under the statute (Employer's Liability Act) is determined by tests similar to those which are applied in actions at common law." 5 Labatt's Master & Servant (2 ed.), 5280.

"While in a large majority of cases, there is no sufficient legal reason, founded on public policy or on the relations of the parties, why the employer should be liable to third parties for the negligence of the contractor or of his servants, there are nevertheless certain duties of so grave a nature that the responsibility for their performance cannot be avoided by delegation. In some cases, as already noted, a person harmed by the tort of an independent contractor is allowed to go beyond the general principle of exemption of his employer and seek redress from such contractor's employer. * *

"The general rule of an employer's nonliability is subject to certain exceptions, which have been thus stated: * * '(4) The employer may be guilty of personal neglect connecting itself with the negligence of the contractor in such manner as to render both liable.'

" * * (3) Where the wrongful act is the violation of a duty imposed by express contract upon the employer; for where a person contracts to do a certain thing, he cannot evade liability by employing another to do that which he has agreed to perform. (4) Where a duty is imposed by statute. The person on whom a statutory obligation is imposed is liable for any injury that arises to others from its nonperformance or in consequence of its having been negligently performed, either by himself or by a contractor employed by him. (5) The employer may also make himself liable by retaining the right to direct and control the time and manner of executing the work, or by interfering with the contractor and assuming control of the work, or some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference." Moll, Independent Contractors' and Employers' Liability, § 65, pp. 124, 125, 126; Id., § 99, p. 200; Id., § 207, pp. 326, 327.

"As well stated in recent cases in New York, there are but three cases in which the owner of fixed property is responsible for acts done upon it which result in injury to another: * * where the injury was occasioned by the omission of some duty imposed on the proprietor." Thompson, Commentaries on the Law of Negligence (2 ed.), § 646, p. 589.

Likewise, the same author announced the rule that the proprietor is responsible if he interferes with the work and retains or assumes general supervision and control: Id., 597, §§ 658, 659.

"There are certain well-recognized exceptions to the rule exempting a contractee from liability, al-

though there is considerable conflict in the authorities as to when the general rule applies and when the case is within an exception, and considerable difficulty is encountered in determining under what particular exception the contractee should be held liable.'' 26 Cyc. 1557, § 3.

''Except where there are statutory provisions to the contrary, the owner of real estate does not ordinarily owe to a person employed on his premises in the service of an independent contractor the duty to furnish a safe place for work, and for omission to do so he is not liable in damages. But the owner may be liable, under particular circumstances, where a duty devolving upon him is not fulfilled. *In the absence of provisions therefor in the contract the contractor* (contractee) is usually under no duty to furnish any appliance for the contractor. But if unsafe appliances are furnished by the contractee and a servant of the contractor is injured thereby, the contractee is liable, especially where it is the duty of the contractee to furnish them *because of his agreement with the contractor.* * * Where the employee of a contractor is injured by the combined fault of the contractor and the owner, the latter is liable.'' 26 Cyc. 1568–1570, b.

''The fact that the proprietor may be liable does not necessarily negative the conclusion that the contractor is liable. The general rule will be that the independent contractor will occupy the relation of master and servant as between himself and his own employees and that such employees will not be regarded as servants of the proprietor. It must follow that in any such case of a negligent injury, where the proprietor becomes liable on the ground that the negligence is that of an independent contractor or his servants, the contractor will be liable.'' Moll, Independent Contractors' and Employers' Liability, 340, § 222.

''Where a contractor, being short of laborers, borrowed a gang of men from a third party, under such third party's foreman one of such laborers was put

in a dangerous place at which he was injured, the contractor and the third party were both held liable." Moll, Independent Contractors' and Employers' Liability, 342, § 223.

"A proprietor who personally interferes in the work is responsible for any injury to a servant of the contractor occasioned by such interference whether such contractor is independent or not." Moll, Independent Contractors' and Employers' Liability, 327, § 207.

"In a joint action against the owner of a building, the contractor and subcontractor, for an injury to the employee of the latter, the contracts and specifications between the owner and the contractor were held properly admitted to show the relation of the defendants to one another." Moll, Independent Contractors' and Employers' Liability, 203, § 101.

"The servants of an independent contractor are not servants of the employer nor fellow servants of those engaged by him: * * But he owes to the servants of the contractor the same duty that he owes to persons rightfully on his premises, and for an injury caused by his negligence or the negligence of his servants in regard to the premises or *appliances furnished by him they may hold him responsible.* * *

"Under this section the servant of an independent contractor may recover from the employer for injuries received through the instrumentalities furnished by the employer for the contractor's use." Dresser, Employers' Liability, pp. 59, 60, § 9.

"The Pacific Mail Steamship Company and Henry Bingham had contracted, the latter to load and discharge the cargoes of the company's ships, the former to furnish the power and appliances necessary for the work. Pursuant to their contract, Bingham was loading flour on one of the company's vessels, when a sling in which flour was hoisted on to and lowered into the ship gave way, and plaintiff, who was stowing cargo in the hold, was severely injured by falling sacks. Plaintiff was a stevedore in the employ of Bingham. He sued Bingham and the company

jointly, and obtained a judgment against both. They prosecute separate appeals from the judgment, and from the order denying a new trial.

"In accordance with the contract the steamship company had furnished Bingham's employees (Bingham not being personally present) with six slings to be used in hoisting the cargo. Upon receiving the slings Bingham's men, according to their habit, examined them, and, rejecting two as defective, accepted four as fit for use.

It was one of these four slings so accepted, which, breaking, caused plaintiff's injuries. The cause of the break was a latent defect in the rope attached to the sling.. This rope, while sound to superficial observation, was for a foot or more of its length affected by a dry rot, which greatly impaired its strength. Bingham had absolute control over his employees and over the conduct of the work.

"It is contended on behalf of the appellant, the Pacific Mail Steamship Company, that these facts exonerate it from liability to the plaintiff in this action; that, even if it failed to exercise the due amount of care in the selection and furnishing of appliances, it was a breach only of its contract with Bingham; that there was no contractual privity between it and this plaintiff, and no duty owing by it to plaintiff, since between it and plaintiff the relation of employer and employee did not exist. But the rule is too firmly settled to be open to successful attack, that where one agrees to furnish to a contractor material or appliances which he is to use in the performance of his task the principal is liable to the servants and agents of the contractor for injuries which may result to them from his negligence or inadequate performance of his contract in this regard. The liability is not based upon the relationship of employer and employee, but it is considered by some courts that the contract is made with the contractor for the benefit of his employees, who have, therefore, the right to a recovery of any breach of it which results in their injury. * * In further support of the

principle may be cited the cases of *Mulchey* v. *Religious Soc.,* 125 Mass. 487; *Lee* v. *Southern Pac. R. R. Co.,* 116 Cal. 97; *McKenna* v. *The Carolina,* 30 Fed. 199; *Coghlan* v. *The Rheola,* 19 Fed. 926; *Hamilton* v. *The Wm. Bramfort,* 48 Fed. 914; *Roddy* v. *Missouri R. R. Co.,* 104 Mo. 234; *Stêel* v. *McNiel,* 60 Fed. 105; *Lake Superior Iron Co.* v. *Erickson,* 39 Mich. 492; *Kelley* v. *Howell,* 41 Ohio St. 438; *Coughtry* v. *Globe Co.,* 56 N. Y. 124." *McCall* v. *Pacific Mail S. S. Co.,* 123 Cal. 42, 43 (55 Pac. 706, 707).

In the McCall case, the judgment was reversed because the injured employee had personally inspected the appliances which caused the injury.

It is claimed, in the instant case, that the plaintiff selected his own rope and is responsible, consequently, for any defects in it. But as we have pointed out heretofore in this opinion, under the Employers' Liability Act of this state, the owner could not delegate that duty to the plaintiff or anyone else. It is not necessary to repeat what has heretofore been written in that regard.

The evidence is conflicting as to whether or not the plaintiff himself selected the rope or his fellow-workmen. The defense of assumption of risk, contributory negligence and the fellow-servant doctrine are not available. The action is brought under the Employers' Liability Act.

It must be understood what we have said about the evidence is based upon the jury's verdict, and not upon our estimation of the value of the evidence.

It is argued that because the defendant lumber company did not direct the plaintiff to use the rope, the parting of which caused the injury, the defendant lumber company is not liable. The verdict of the jury establishes the fact that the defendant lumber company was *engaged* in doing the construction

and repair work at the time the injury was inflicted; that it was in immediate control of the workmen including the plaintiff; and that it was its duty to supply and furnish the appliances and material. It is guilty of negligence because it failed to furnish safe appliances: Section 6785, Or. L.

That eminent jurist, Judge COOLEY, has defined negligence as follows:

"Negligence is the failure to observe, for the protection of the interest of another, that degree of care, precaution, and vigilance which the circumstances justly demand. (Cooley, Torts, p. 630.)" Cited with approval in 2 Jaggard on Torts, 810.

The violation of the statute designed for the protection of others constitutes conclusive evidence of negligence: *Cauldwell* v. *Bingham & Shelley Co.*, 84 Or. 257 (155 Pac. 190, 163 Pac. 827). The defendant lumber company omitted to furnish safe appliances. If by failing to do its duty it is exonerated from damages, the provisions of Section 6785, Or. L., are largely abrogated. There is testimony to the effect that the rope used, if in proper order, was of sufficient strength to have supported the weight required for the purpose it was used. A similar rope had been used under the same conditions repeatedly. If the defendant lumber company had furnished a suitable appliance and the plaintiff had not used it, but used one of his own selection instead, a different question would be presented.

By the terms of the contract between the defendant Synnes and the defendant lumber company, the latter was to furnish the appliances and material for doing the work, and to supervise the work and direct the workmen in the details of the work. The defendant Synnes was a general contractor having

other contracts in operation at the time the accident occurred. Both he and the defendant lumber company were engaged at the time in repairing the dock and doing other work required to be done by the defendant lumber company. The defendant lumber company exercised the right to control the workmen at least to a large degree. An officer of the company caused the plaintiff to be placed where he was on the job at the time he was injured. If the plaintiff was foreman of the two or three men with whom he was working, he was made so by the defendant lumber company and not by the defendant Synnes. If Knapp was the foreman of all of the employees of defendant Synnes, then he was so by virtue of the conduct of the defendant lumber company, for the effect of the jury's verdict is that the defendant Synnes never appointed Knapp or authorized him to act as foreman. The verdict could mean, in effect, that Knapp received no authority to act as foreman, but performed some such duty by general consent and recognition of him in that capacity by the defendant lumber company. There is no evidence that he was ever so recognized by the defendant Synnes, his employer. The terms of the contract are uncertain and undefined. There is conflicting evidence about them. The only means of determining what they were is the oral testimony of the witnesses. Under such circumstances and in such cases, the contract itself must be determined by the jury. The question presented is one of fact. Under these conditions, the jury's verdict placed the duty of supplying the appliances and material for the work on the defendant lumber company. It failed in that duty. In consequence of that neglect, the plaintiff was injured and is entitled to recover.

The learned judge of the Circuit Court instructed the jury properly under the issues and the evidence. Among others, he gave the following instructions:

"It will be necessary for you to determine, then, which of the contentions, that of the plaintiff or that of the defendant, is true. If you find that the defendant West Oregon Lumber Company was actively engaged in carrying on this work as alleged by the plaintiff, then you must pass to a further consideration that the defendant West Oregon Lumber Company's responsibility viewed in that situation.

"If you find that it had made an independent contract with Synnes, and was not actively engaged in carrying on the work, then you cannot find against the defendant West Oregon Lumber Company, but must find in its favor.

"And in this connection I will say that a party who contracts with another to do and perform certain work or labor, and the person so contracting has no control or management of the work, in such case the one who undertakes the work becomes an independent contractor.

"You may apply this rule to the defendant West Oregon Lumber Company's allegations and the proof herein, that it had made an independent contract with the defendant Synnes, and if you find that it made such a contract and was not actively engaged in the work at hand, then as I said before, you cannot find against the defendant West Oregon Lumber Company."

Further instructions of like tenor amplifying the foregoing were given by the learned judge, so that the theory of the defendant lumber company was completely and fully placed before the jury and doubtless considered by it.

The judgment of the Circuit Court should be affirmed.

BEAN, J., concurs in this dissent.