Argued June 6, affirmed July 13, 1915.

## HARVEY v. CORBETT.*

(150 Pac. 263.)

**Master and Servant—Safety Devices—Statutory Requirements.**

1. Substitutes for safety appliances not within the substantial specification of the Employers' Liability Act (Laws 1911, p. 16) do not take the place of devices specifically named, and devices or things required by a city ordinance will not serve as a substitute for those required by the act.

**Master and Servant—Safety Appliances—Statutory Requirements.**

2. Where it did not appear that "tie-in" ropes used to keep a staging from swaying could not be so arranged as not to injure the woodwork of the building, the fact that such woodwork is injured does not excuse noncompliance with the statute requiring such "tie-in" ropes.

**Master and Servant—Independent Contractors—Who are.**

3. Where a contract provided that a construction company should be paid a commission as the owner's agent in constructing a building according to plans and specifications, that the principal should pay for all material, but the agent might contract in the name of the principal for labor and material, such contracts to be submitted to the principal for approval, and that the owners had a right to employ a person to inspect any work or materials in the manner of construction, the construction company employed was not an independent contractor.

> [As to duty and liability of person furnishing appliances for use by servant of another for injury to such servant, see note in Ann. Cas. 1913C, 754.]

---

*As to who are independent contractors, see notes in 65 L. R. A. 445; 17 L. R. A. (N. S.) 371.                    REPORTER.

Master and Servant—"Independent Contractors"—Who are.

4.   Under Employers' Liability Act (Laws 1911, p. 17), Section 2, providing that the manager, superintendent or foreman, or other person in charge of the construction shall be held to be the agent of the employer in all suits for damages by an employee, where a contract for the construction of a building provided that the work should be overseen by a firm of architects, such architects were not independent contractors.

Master and Servant—Safety Appliances—Statutory Requirements.

5.   The Employers' Liability Act provides that, when any staging is used in the construction of a building at a certain height, it must be fastened with lash ropes to keep it from swaying, and the scaffold must also be provided with a guard-rail.   While plaintiff was engaged at work upon a scaffold, the supporting ropes slipped, and he fell to the ground and was injured.   The lash ropes which had previously been used were ordered taken off by defendant's superintendent.   *Held* that, the furnishing of tie ropes being a nondelegable duty, defendants were liable.

Master and Servant—Assumption of Risk—Employers' Liability Act.

6.   Assumption of risk constitutes no defense under the Employers' Liability Act.

From Multnomah:  HENRY McGINN, Judge.

Department 2.   Statement by MR. JUSTICE EAKIN.

This is an action by J. A. Harvey against Henry Ladd Corbett, Elliott R. Corbett and Hamilton F. Corbett, William B. Patterson, Albert E. Doyle and J. George Beach, partners as Patterson, Doyle & Beach, and John Doe Frenell, to recover damages for personal injuries received on May 18, 1912, while working on the Lipman-Wolfe ten-story building in Portland, Oregon.   The Corbetts were the owners of the building, and the Hurley-Mason Company, a corporation, was constructing it.   At the time of the accident the skeleton work on the structure had been completed, and the constructors were in the act of washing off the outside and cleaning the premises by "washing down and pointing up," the latter being done by inserting into the seams a soft material sometimes called putty. In placing the terra-cotta and constructing the build-

ing the face of it became tarnished and soiled. The plaintiff had worked thereon for some five months laying terra-cotta, and for two weeks prior to the accident had worked at washing down and pointing up the face of the building. This work was being done on a scaffold about 20 feet long which was hung from the top of the structure and swung by means of a block and tackle fastened at each end. The ends of the ropes used were woven through two holes in the bottom of the staging, which, when near the top of the building, the weight of the long ropes would hold without other fastening. Two men, the plaintiff and a fellow-workman, got on the staging after it was put in place and began to perform the work stated as the scaffold was lowered. In doing this the employees had a trowel, two buckets of water, two of acid, and one of putty on the scaffolding, each holding about five gallons. The plaintiff was an experienced bricklayer, and had done this kind of work for some fifteen years. He and his coworker had started from the top of the building, and on the day of the accident had reached the bottom of the fifth floor. It appears that on the previous evening when they quit work they fastened the rope at the end of the scaffold. On the next morning after they had worked about 30 minutes plaintiff's fellow-worker, one Tower, stated that he was ready to lower down, and asked Harvey if he were ready, to which plaintiff replied that he had one more block to finish and for him to wait a minute. Just as Harvey in his work pushed against the building, his fellow-workman having perhaps lowered his own end of the staging about 8 inches, the scaffolding swung out from the structure, the rope slipped, plaintiff's end of the staging dropped to an angle of about 45 de-

grees, and he fell to the covering about 8 feet above
the sidewalk and was injured. The plaintiff alleges
that the scaffolding was extremely heavy, and on ac-
count of such extra weight more dangerous than an
ordinary one of the same size; that defendant failed
and neglected to provide any fastening to keep the
staging from swaying, and that thereby it was so
swung that plaintiff and his coworker attached to it
certain lash or "tying-in" ropes by which the scaffold-
ing was tied against the side of the building so that it
could not swing out; that these ropes were tied to
certain water or steam pipes in the interior, and while
the staging was so securely fastened the defendants
Patterson, Doyle & Beach, through the defendant
Frenell, commanded and directed plaintiff and his co-
worker to loosen and remove the ropes and prevented
them from using the same; that thereby the swinging
scaffold was left without any lash ropes, and plaintiff
was compelled to use the same when not rendered
stable, not secured from swaying, and not provided
with a sufficient safety rail or other device so as to
prevent any person from falling therefrom; that such
precautions could have been taken without interfering
with the efficiency of the scaffolding or the discharge
of the duties of the employees; that the scaffold was
defective, insufficient and in a dangerous condition.
The answer of the Corbetts asserts, in effect, that at
the time of the injury plaintiff was solely in the employ
of the Hurley-Mason Company, the contractor; that
there was no privity of contract between the owners
and plaintiff, and that the company had no control
over him and had nothing to do with the scaffolding;
that the injury was caused wholly by plaintiff's own
carelessness in not keeping the ropes in a proper posi-

tion; that on August 6, 1912, plaintiff brought an action in the Circuit Court against Hurley-Mason Company for damages for said injuries, which proceeding was removed to the federal court, where the cause was tried, a verdict directed, and a judgment rendered in favor of the defendant Hurley-Mason Company; that the scaffolding in question was constructed according to an ordinance of the City of Portland. The answer of the other defendants is of much the same general tenor. There was a verdict and judgment for plaintiff. Defendants, except Frenell, appealed.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. Frank S. Senn.*

For respondent there was a brief over the name of *Messrs. Littlefield & Smith,* with an oral argument by *Mr. Isham N. Smith.*

MR. JUSTICE BEAN delivered the opinion of the court.

The action is brought under the Employers' Liability Act. As we understand the law, the guard-rail, which it is alleged the defendant failed to furnish, is required for protection generally and in case of a misstep or accident. It is unnecessary to conjecture as to how many times or under what circumstances the same would have been of service. The jury may have reasonably believed from the evidence that, if there had been a hand-rail available when plaintiff put up his hands and found nothing but a smooth wall, that he would have caught hold of it, saved himself from a fall, and prevented the injury. There was testimony to support such a belief. The statute also requires stag-

ing when more than 20 feet from the ground or floor to "be secured from swaying." It is shown by the evidence that in the use of a movable scaffolding like the one employed at the time of the accident it is customary to fasten the same to a building by "tying-in" ropes or wire. The act makes a definite command, both in regard to securing the scaffold from swinging and providing an efficient safety-rail. Therefore the failure to observe the mandate of the law on the part of the owners, contractors or subcontractors, and other persons having charge of, or responsible for, the work, renders the persons responsible therefor liable for any injury caused by such neglect. The primary purpose of staying such a "boat," as it is called by the employees, is to prevent its swaying. The manifest increase in the danger that might be caused by a staging swaying, whether tending to precipitate a fall or rendering the fastenings of the structure insecure by wearing or becoming displaced, is not specified in the act and need not be detailed. Suffice it to say that the requirements of the statute should be obeyed.

1. Substitutes not coming within the substantial specifications of the law do not take the place of devices specifically named in the act, nor excuse a noncompliance therewith: *McClaugherty* v. *Rogue River Elec. Co.*, 73 Or. 135 (140 Pac. 64). The jury evidently concluded that one or both of the devices called for in the statute would have prevented the catastrophe, and that the want thereof was the proximate cause of the injury. The evidence warrants such a conclusion. It is appropriate for the city to ordain for the safety of workmen, and any rule so made not in conflict with the state law should be heeded (*Kalich* v. *Knapp*, 73 Or. 558 (142 Pac. 594); but certain devices or things re-

quired by the city ordinance would not serve as a substitute for those which are distinctly directed to be provided by the act. There was therefore no error in the holding of the trial court that the statute controls.

Counsel for defendant requested the court to charge the jury as follows:

"I instruct you, if the scaffold upon which the plaintiff was working was constructed in accordance with an ordinance of the City of Portland which was in full force and effect at the time the plaintiff received his injury, there was no negligence in so constructing said scaffold."

This requested instruction, in effect, would inform the jury that, if the ordinance was complied with, the lack of a safety rail or fastening to prevent the scaffolding from swaying would not be material. Such is not the statutory mandate. This is not purely a local matter for the city to legislate upon under the Constitution. It is, however, a proper subject for the exercise of the police power of the state by the lawmakers. The statute says that such a structure, when at a certain height, shall be "provided with a strong and efficient safety rail or other contrivance so as to prevent any person from falling therefrom." It does not direct that one side or one end or any special part of the staging should be so guarded, but that there should be some contrivance "so as to prevent," etc. As to where the safety rail should be placed must necessarily depend upon the circumstances or conditions. When a staging is fastened to the side of a building, it is obvious that the structure would serve as such guard upon one side. The law does not seem to contemplate that the building would answer for that purpose under all conditions.

2. It is the position of defendant that the tie-in rope which fastened the staging damaged the woodwork on the inside of the building, and that it was therefore proper for the architect to discontinue such process. It does not appear but that some precaution could have been practicably taken by tying the rope so as to prevent any injury to the building, and such circumstances do not render a compliance with the statute unnecessary.

3. We come next to the very important investigation as to the liability of the Corbetts. It is the contention of the defendants that the Hurley-Mason Company was an independent contractor, and that it, and not the owners, was responsible for the details of the work and had full control of the employees. We have only to apply the plain provisions of the statute. The language of the text-writers and courts in other cases is helpful. The pertinent inquiries are: Who had the right to control the servants? Was Hurley-Mason Company acting merely by the authority of the owners? Or, in the language of the statute, who was the real employer of the plaintiff at the time of the injury? We considered a similar question in *Dalrymple* v. *Covey Motor Car Company,* 66 Or. 533 (135 Pac. 91, 48 L. R. A. (N. S.) 424).

Under the contract between the Corbetts and the Hurley-Mason Company, which is in evidence, it appears, in substance, that the owners contemplated the erection of a building at an estimated cost of $600,000, and that the Hurley-Mason Company was employed, with its plant or equipment, by the Corbetts for the full compensation of $20,000 as commission, as their agent to construct the building according to the plans and specifications. In the contract it was provided, among other things, that:

"The principal shall pay for all material used and all labor performed in the construction of the building, * * but the agent shall have the right to enter into contracts for and on behalf of the principal and in its name for the purchase of all necessary material and the hiring of necessary labor."

All contracts, except as to minor matters, were to be submitted to the principal for approval. Hurley-Mason Company is distinctly referred to as the agent of the owners. If the cost of the building proved to be above the estimate, it did not affect the commission, and if it was built for less all rebates and discounts obtained by Hurley-Mason Company inured to the benefit of the owners. They had the right to employ a person for the inspection of any work or materials and the manner of conducting the business relative to the construction. The authority of the owners, acting through their chosen supervisor, was paramount to that of Hurley-Mason Company. This authority the owners exercised when their servant ordered the fastening of the scaffolding taken away from the building. The Hurley-Mason Company, as designated in the contract, was, in fact, the agent of the owners in the work of construction. Its authority, it is true, was great, but it was all derived from the Corbetts. The company was employed to construct the building as such agent, and was to be paid for its skill, judgment and experience. It was not an independent contractor. It would not change the effect of the contract if it were to be paid a salary by the month or year, instead of a commission.

In 1 Labatt's Master and Servant, page 126, the author states:

"A provision in an agreement which confers upon the superior employer the right of controlling the con-

tractor himself in respect to the details of the work must necessarily imply that he is to retain the right of controlling to the same extent the servants, who are the instruments through which the contractor performs the work; otherwise such a provision would be meaningless and ineffectual."

See, also, *Atlantic Transport Co.* v. *Coneys,* 82 Fed. 177 (28 C. C. A. 388).

In *Oregon Fisheries Co.* v. *Elmore Packing Co.,* 69 Or. 340 (138 Pac. 862), this court quotes from 26 Cyc. 966, as follows:

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished; or, in other words, not only what shall be done, but how it shall be done."

See, also, *Swackhamer* v. *Johnson,* 39 Or. 383, 387 (65 Pac. 91, 54 L. R. A. 625); *Giaconi* v. *City of Astoria,* 60 Or. 36 (113 Pac. 855, 118 Pac. 180); *Ackles* v. *Pac. Bridge Co.,* 66 Or. 110 (133 Pac. 781); *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037); *Tamm* v. *Sauset,* 67 Or. 292 (135 Pac. 868); *Winniford* v. *MacLeod,* 68 Or. 301 (136 Pac. 25); *Lintner* v. *Wiles,* 70 Or. 350 (141 Pac. 871); *Fisher* v. *Portland Ry., L. & P. Co.,* 74 Or. 229 (143 Pac. 993); *Dibert* v. *Giebisch,* 74 Or. 64 (144 Pac. 1184); *Cockran* v. *Rice,* 26 S. D. 393 (128 N. W. 583, Ann. Cas. 1913B, 574); *Hoag* v. *Oregon-Wash. Corp.,* 75 Or. 588 (147 Pac. 756, 760).

4. 5. There was evidence in the case at bar from which the jury might reasonably find, and it appears that they did find, that Harvey was injured by reason of the interference with the manner of using the instrumentality which the Hurley-Mason Company supplied, necessary for preventing the staging from sway-

ing. The furnishing of this device was a nondelegable duty of the master. The order to take away the lash ropes was given by Frenell, the personal representative of Patterson, Doyle & Beach, architects, the servants of the Corbetts. They were not independent contractors.

Section 2 of the act declares:

"The manager, superintendent, foreman or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employee."

This section is applicable to the Corbetts. This phase of the case has been heretofore fully discussed. In *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037), on petition for rehearing, Mr. Chief Justice McBRIDE, in a terse discussion of the law, at page 300 of 66 Or., at page 1037 of 134 Pac., uses the following language:

"The plain intent of the law is to give the injured employee a remedy against his employer."

Again on the same page it is stated:

"Now, plaintiff was not employed by defendants; neither had they any authority over him; and we would be compelled to read something into the law that is not written there to hold them liable."

The first part of the above quotation is particularly applicable to the Corbetts, and the last to the Hurley-Mason Company, which was not responsible for the order to remove the fastening of the staging. No representative of that company had anything to do with taking away the same. Patterson, Doyle & Beach, through Frenell, ordered the rope which prevented the scaffolding from swaying to be removed, and the jury

by their verdict found them to be delinquent in this respect. Under the ruling in *Hoag* v. *Oregon-Wash. Corp.*, 75 Or. 588 (147 Pac. 756, 760), they violated their duty and are responsible therefor. There was no error in denying defendants' motions for a directed verdict. Counsel for defendants saved the rights of their clients by appropriate motions for a nonsuit made at the proper time, but there was no error in denying the same.

6. A careful consideration of the charge given to the jury leads us to believe that the case was fairly submitted under the Employers' Liability Act. After reading the statute the trial judge plainly explained the application thereof. It is settled that under the above statute assumption of risk is not a defense.

It follows, therefore, that the judgment must be affirmed as to the Corbetts and Patterson, Doyle & Beach, and it is so ordered.          AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.