# WIENKE et al, *Appellants,*
## *v.*
# OCHOCO LUMBER COMPANY, *Respondent.*
### (No. 9790, SC P-2474)
558 P2d 319

*David A. Vinson,* Eugene, argued the cause for

appellants. With him on the briefs was Malagon, Starr & Vinson, Eugene.

*William M. Holmes,* Bend, argued the cause for respondent. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

Before Denecke, Chief Justice, and O'Connell, Holman, Tongue, Howell and Bryson, Justices.

HOLMAN, J.

## HOLMAN, J.

This is an action for damages for the death of a timber faller who was killed by a tree felled by a co-worker. The issue on appeal is whether defendant owed a duty under the Employers' Liability Law (the Act) to plaintiffs' decedent, who was employed by a contractor of defendant.

Plaintiffs' decedent was killed on December 12, 1969. Until 1966 he had been an employee of defendant and a member of the International Woodworkers of America, AFL-CIO, Local Union 3-200. He had worked for defendant as part of a falling crew consisting of four fallers and a "bull buck," a kind of supervisor. In 1966 defendant decided to "gypo" or contract out the falling operation and terminated the men of the falling crew.[1] After accepting bids, it awarded the falling contract to a logging corporation formed by C. L. Burgess, who had been defendant's bull buck prior to the termination of the falling crew. The logging corporation employed three of the four former members of the falling crew, including plaintiffs' decedent. They worked under conditions which were much the same as before, except that since Burgess worked as one of the fallers, there was no bull buck. Plaintiffs' decedent was struck by a falling tree because the co-worker who felled it believed that plaintiffs' decedent was not in the area where the tree would fall.

At the time of the death there was a collective bargaining agreement in effect between defendant and the International Woodworkers of America, AFL-CIO, Local 3-200, which provided, in part, as follows:

"(a) The Employer *shall require its contractors* and sub-contractors *to maintain* the standard of wages and working conditions provided in its collective bargaining agreement with the International Woodworkers of

---

[1] Defendant's right to terminate the falling crew and to contract out the falling operation was adjudicated in separate litigation in the federal courts.

America, AFL-CIO, subject to the following conditions and exceptions:

"(1) This provision shall not apply to * * * contracts for performance of work not previously done by employees of the Employer.

"(2) * * * 'Working conditions' as used above in this article is limited to the physical conditions under which productive work is actually performed." (Emphasis ours.)

There was, in fact, no other provision in the agreement dealing with working conditions. On the basis of other evidence, the trial court interpreted the agreement for the jury as follows:

"We instruct you that the defendant had a duty under this agreement to require its contractors and subcontractors to maintain the same standard of working conditions, regarding the physical condition under which productive work was to be actually performed, including weather and safety precautions, which had existed when defendant's direct employees had performed the same work in falling and bucking timber. * * *."

The trial court apparently held that plaintiffs' decedent was a third party beneficiary of the agreement and that the agreement established a relationship which made defendant potentially liable in tort for negligent breach of the agreement. The correctness of this holding is not in issue here.

The trial court submitted to the jury the issue of whether defendant was negligent in not performing its duty under its contract with the Union[2] in permitting the Burgess Logging Company to endanger plaintiffs' decedent

"1) By not keeping the fallers informed of the location of * * * buckers * * * or other workmen passing in the vicinity of trees being felled.

---

[2] The agreement between defendant and its contractor Burgess Logging Company required Burgess to "* * * comply with * * * all * * * laws relating to the condition of labor and its safety * * *." However, the trial judge apparently submitted the case to the jury upon the basis that there was evidence that defendant had negligently failed to enforce this agreement.

"2) By not requiring the fallers to work in teams.

"3) By placing the fallers and buckers in such close proximity with other fallers and buckers that trees felled by one faller could strike another workman.

"4) By failing to require the defendant's contractor C. L. Burgess Logging Company, Inc., to follow the practice known as 'Stripping' in the performance of the woods operation of falling, bucking and limbing trees.

"5) By requiring and permitting fallers to work in weather conditions that made falling hazardous and dangerous in that said fallers, buckers and limbers, including the Plaintiffs' decedent, on the date and at the time of his death, were working when snow covered the trees and brush in the vicinity of their work thereby obstructing their vision so that it was not possible for a timber faller to see and locate other workmen, and which prevented said fallers from giving any or an adequate and timely warning to other persons of the vicinity of trees about to be felled.

"6) By failing to plan in advance said woods operation of falling and bucking and limbing so as to provide for the safety of fallers, buckers and limbers, and by failing to see that a predetermined plan was followed."

These allegations were restated in each of the complaint's three counts: one in negligence (the only one submitted to the jury), one in contract, and one under the Act. The jury returned a verdict for defendant.

The sole issue on appeal is the propriety of the withdrawal from the jury of the count under the Act. Plaintiffs urge that by reason of the collective bargaining agreement, defendant assumed the duty to exercise such control over the working conditions in the falling operation as would make it subject to the more stringent requirements of the Act.

■ A dual question of statutory and contractual interpretation is involved. The statutory provision which must be interpreted is the first section of the Act, ORS 654.305:

"Generally, *all owners,* contractors and subcontractors and other persons *having charge of, or responsible for, any work involving a risk or danger to the employes*

[ 1163 ]

or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices." (Emphasis ours.)

This first section of the Act requires that there be a certain kind of relationship between plaintiffs' decedent and defendant before the Act will apply. The Act does not extend "to any case where the person charged with doing an injury sustains no such relation by contract or otherwise different from that which he sustains to the whole public." *Drefs v. Holman Transfer Co., et al,* 130 Or 452, 459, 280 P 505 (1929). It is not necessary that plaintiffs' decedent have been directly employed by defendant. *Thomas v. Foglio,* 225 Or 540, 544, 358 P2d 1066 (1961). It is not in itself sufficient, however, that plaintiffs' decedent have been employed by a contractor of defendant. *Lawton v. Morgan, Fliedner & Boyce,* 66 Or 292, 131 P 314, 134 P 1037 (1913).

The usual test for the requisite relationship under the Act is stated in terms of a defendant's control over the work which involves a risk or hazard. *Wilson v. P.G.E. Company,* 252 Or 385, 390, 448 P2d 562 (1969). The two kinds of cases in which it has been recognized that a duty under the Act can be owed to the employees of one's contractor are (1) where sufficient right of control is retained over the manner in which the work is conducted by the contractor's employees; and (2) where no right of control is retained but actual control is exercised so as to result in injury to one of the contractor's employees. *Wilson v. P.G.E. Company, supra* at 392. There was no actual control exercised in this case. If plaintiffs have a case under the Act, it must be upon the basis that defendant had the right of control over the manner in which the work was conducted by the employees of the Burgess Logging Company.

■ Without objection by the parties, the trial judge listened to conflicting testimony concerning the relationship between defendant and its contractor which was required by the provision in defendant's contract with the Union, and ruled that the contractual provision did not give defendant sufficient right of control to bring it within the Act. From the trial judge's questions and statements it is apparent that he thought that the contract did not provide that defendant should have any right to actually control the manner in which the Burgess Logging Company's employees performed their duties but that defendant should have only *the right to require the contractor* to comply with the degree of safety previously required when the falling and bucking were performed by defendant's employees. The trial judge apparently also thought that without the right to directly control the injury-creating activity, the Act did not apply. We agree with the trial judge. The contractor employed the plaintiffs' decedent and directly controlled the work in which he was injured. Defendant only obligated itself to "*require its contractors* and subcontractors to maintain the standard of wages and working conditions * * *" (emphasis ours). Defendant's control over working conditions was to be exercised upon, and not apart from, its contractor.

This is in contrast with the case upon which plaintiffs particularly rely, in which it was held that duties assumed by contract brought a defendant within the Act. In *Wolsiffer v. Bechill,* 76 Or 516, 146 P 513, 149 P 533 (1915), the defendant had contracted with the City of Portland to grade a street. The ordinance authorizing the improvement required that:

> "The contractor or contractors for said improvement shall take entire charge of the work during its progress and shall be responsible for any loss or accident resulting from carelessness or negligence and the improvement shall be completed to the satisfaction of the executive board of the said City of Portland." *Id.* at 521.

Pursuant to the ordinance, the contract contained the following condition:

> "The *said work shall be performed under the personal supervision of the contractor,* and no part of this contract, nor any interest therein, shall be sublet, assigned or transferred without the written consent of said city, by its executive board, and no such written consent shall release the contractor from any obligation, either to said city or to the persons employed by any subcontractor, and *all subcontractors shall be considered merely as employees of the contractor* and may be discharged by said city for incompetency, neglect of duty or misconduct." (Emphasis ours.) *Id.* at 520.

Plaintiffs also rely upon the case of *Morgan v. Bross,* 64 Or 63, 129 P 118 (1913), in which the defendant was the principal contractor and the plaintiff was a plumber, an employee of a subcontractor. A city ordinance required temporary floors at each story during construction, and for the want of such flooring plaintiff was injured when a brick fell upon his head. The court held that the defendant could not delegate the duty to comply with the ordinance and thus excuse itself when a subcontractor failed to construct the floor. By analogy plaintiffs argue that one who assumes the duty of control should not be allowed to pass that duty to others. This argument begs the question, however. The issue here is whether defendant contractually assumed sufficient control to come within the purview of the Act and, thus, assume the duties imposed by the Act. Plaintiff's contention assumes the answer.[3]

---

[3] The dissent's quoted language from Harvey v. Corbett, 77 Or 51, 59-60, 150 P 263 (1915), is, in our opinion, not pertinent to the present case because we conclude that the trial judge here found that it was not the intention of the parties to the agreement that defendant have actual control of the workmen.

The dissent also relies upon language from Thomas v. Foglio, 225 Or 540, 546-47, 358 P2d 1066 (1961), in which the defendant was held to come within the Act despite his not having immediate supervision of the work. However, in *Thomas* the defendant was in direct control of the condition of the defective machinery which was in use at the time of the accident and which use of defective machinery resulted in plaintiff's injury. Therefore, the court held he had sufficient control to come within the Act.

■ There is another reason for holding that the Act should not apply. We stated as follows in *Wilson v. P.G.E. Company, supra* at 395-97:

> "The purpose of the [Employers' Liability Law] is the maximum protection of workmen engaged in hazardous occupations. Therefore, before a retained right of control by an owner should give rise to liability, that retained right of control should bear some relation to the creation of a risk of danger to workmen resulting from dangerous working conditions.

> "* * * The right of defendant to take over control to attain a greater degree of safety created no risk of danger to plaintiff. Before any such right to control would relate to the creation of a risk to plaintiff, the contract would have to create a situation where the contractor would probably be less diligent concerning safety because of an expectancy that defendant would exercise the necessary care. * * *.

> "The retention of the right by owners to direct the manner in which the work is done, if necessary to secure greater safety, tends to promote the same policy as that of the [Employers' Liability Law]. * * * Therefore, if duties not otherwise required of owners are imposed because of the reservation of a right to require safety precautions, it is obvious that owners will not actively concern themselves with the workmen's safety. As a result, the imposition of liability under the Act, because of a reservation of the right to impose safety measures, would defeat the very purpose the Act was designed to accomplish. Such an imposition of liability is contrary to the policy of the Act where no risk is created that the contractor will fail in his duties to his employees."

To hold defendant subject to the Act in the present circumstances would defeat the very purpose of the Act, which is additional safety to workmen. It would mean that owners would refuse to enter into such contracts with unions, and, as a result, contractors would not have the additional pressure of their contractual obligation to the owner to maintain safe conditions. In addition, by no stretch of the imagination can it be argued that any risk was created that the contractor would fail in his duties of safety to his

employees upon the expectation that defendant would take care of such duties, because defendant itself had no right to supervise the employees of the contractor.[4]

The judgment of the trial court is affirmed.

**TONGUE, J.,** dissenting.

I dissent because I believe that the majority has given an unduly narrow interpretation to the Employers' Liability Act and one that is inconsistent with our previous decisions holding that it must be liberally construed to provide maximum protection to workmen engaged in dangerous work.

The majority holds that the trial court did not err in withdrawing from the jury the third "count" of plaintiff's complaint (alleging liability under the Employers' Liability Act) for two reasons:

(1) The trial court, after hearing conflicting testimony, properly interpreted defendant's contract with the union to do no more than reserve to defendant "the *right* to require the *contractor* to comply with the degree of safety previously required," but "without the right to *directly* control the injury-creating activity."

(2) "The retention of the *right* by owners to direct the manner in which the work is done, if necessary to secure greater safety, tends to promote the same policy as that of the [Employers' Liability Law]," with the result that to impose liability under that Act for the reservation of such a *right* would be "contrary to the policy of the Act where no risk is created that the contractor will fail in his duties to his employees" upon "the expectation that defendant would take care of such duties."

---

[4]The dissent attempts to distinguish Wilson v. P.G.E. Company, 252 Or 385, 390, 448 P2d 562 (1969), from the present situation because in this case the contract with the Union imposed the duty, rather than the right, to see that safety precautions were taken. This distinction, in our opinion, is irrelevant when the rationale of *Wilson* is taken into consideration. There would be no possibility that the contractor would fail to use care for the safety of its workmen because of the contractual duty undertaken by defendant in its agreement with the Union.

[ 1168 ]

With all due respect to the majority, I believe that neither of these reasons provides a proper basis for the decision of this case.

Before considering the validity of these two propositions and their application to the facts of this case, however, it is well to bear in mind the extremely broad and all-inclusive terms of the "and generally" provision of the Employers' Liability Act. ORS 654.305 provides:

"* * * all owners * * * *having charge of or responsible for,* any work involving a risk or danger to the employes * * *, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb * * *."

As stated in *Drefs v. Holman Transfer Co. et al,* 130 Or 452, 455, 280 P 505 (1929):

"* * * It was a beneficient statute and as construed by this court, which has gone to the extreme of liberality in construing it, has resulted in extending to employees in hazardous occupations a degree of protection theretofore unknown. * * *"

In *Wilson v. P.G.E. Company,* 252 Or 385, 395, 448 P2d 562 (1969), it was again held that:

"The purpose of the ELA is the maximum protection of workmen engaged in hazardous occupations. * * *"

1. *The contract between defendant and the union imposed upon defendant "responsibility" for continuation of previous safety practices, within the terms of the Employers' Liability Act.*

The unique feature of this case is that it is not a case in which plaintiff rests her claim that defendant was in "charge of or responsible for" this "work" upon a provision in the contract between defendant and an independent contractor, but upon a provision in a *labor contract between defendant and a union* and one which not only reserved to defendant a *right,* but *imposed a duty,* to require its contractors to maintain previous working conditions relating to safety.

At the time that contract was negotiated, defendant

desired to subcontract its falling and bucking opera-
tions. The union opposed the subcontracting of such
work, in accordance with the traditional positions of
unions on that subject. This difference in position was
then the subject of collective bargaining which
resulted in a compromise under which, in effect, the
union agreed not to object (as by strike) to the
subcontracting of the falling and bucking provided
that the defendant undertook the duty to "require its
contractors to maintain the same standards of wages
and working conditions," including previously existing
safety practices.

As stated by the majority, it appears from the
record in this case that although it was contended at
the time of trial that this contract provision was
ambiguous, in the legal sense, resulting in a question
of fact as to the intention of the parties in the use of
those terms, the trial judge considered the interpreta-
tion of this provision to be a question to be decided by
the court and the parties then submitted that question
to him for decision, rather than to the jury.[1]

The majority says that the trial court interpreted
this contract provision to mean that defendant could
only "require its *contractors and subcontractors*" to
maintain and continue these previous safety practices,
but that such control over working conditions could
only be exercised "upon, and not apart from, its
contractor."

*In Harvey v. Corbett,* 77 Or 51, 59-60, 150 P 263
(1915), this court quoted with approval the following
rule of law for application in such cases as stated in 1
Labatt, Master and Servant 126 (1913):

" 'A provision in an agreement which confers upon
the superior employer the right of controlling the con-
tractor himself in respect to the details of the work must
necessarily imply that he is to retain the right of

---

[1] In *May v. Chicago Insurance Co.,* 260 Or 285, 292, 490 P2d 150 (1971),
it was held that such a question of fact is a proper question of fact for
submission to a jury.

controlling to the same extent the servants, who are the instruments through [whom] the contractor performs the work; otherwise such a provision would be meaningless and ineffectual.' "

It may be seriously questioned whether, in view of this rule, as adopted by this court, it was proper for the trial court to hold that although the contract between the company and union provided that the company would *"require"* its contractors to maintain previous safety practices, the company could "exercise" the power conferred by that contract provision only "upon, and not apart from its contractor." But even if the trial court was correct in that interpretation of the contract, it still does not follow that the duty imposed by this contract upon the company to *"require"* its contractors to maintain previous safety conditions did not result in the company being *"responsible"* for this "work" within the intended meaning of the Employers' Liability Act.

In *Thomas v. Foglio,* 225 Or 540, 546-47, 358 P2d 1066 (1961), with reference to both ORS 654.305 (the Employers' Liability Act) and 656.154 (re "joint supervision and control"):

"* * * We do not pass upon the question of whether the control required under each of these statutes is the same, but *both statutes have been liberally construed to cover situations in which the defendant did not have actual control over the specific activity which was the immediate cause of the plaintiff's injury.* Defendant's participation has been considered sufficient where it amounted to co-operative conduct in accomplishing a task in which both the defendant and plaintiff's employer were interested. * * *" (Emphasis added)

In my opinion, it follows from the applications of the rule of *Thomas v. Foglio, supra,* to the facts of this case, including this contract provision requiring defendant to *require its contractors* to maintain previous working conditions relating to falling and bucking work, that defendant had such "control" or "responsibility" over such work as to be subject to the provisions of the Employers' Liability Act.

[ 1171 ]

It must again be kept in mind that ORS 654.305, by its broad terms, imposes the duty to comply with the strict standards provided by the Employers' Liability Act not only upon owners who *"have charge"* of work involving risk hazard or danger, but also upon owners who are *"responsible"* for such work and that these provisions must be liberally construed to provide *"maximum protection"* to persons engaged in such work.

Even if, as held by the majority, defendant is limited in the discharge of the duty imposed upon it by its labor agreement with the union to the "exercise" of that duty only "upon" the contractor, that provision imposes upon the defendant the "responsibility" to insist, through the contractor, that previous safety practices be continued and to *"require"* its contractor to do so. To hold to the contrary, in disregard of the plain terms of the Act imposing liability upon those *"responsible"* for dangerous work would, in my judgment, be contrary to our professed purpose to construe this statute liberally so as to provide "maximum protection" to those engaged in dangerous work. The widow of this workman is entitled to no less.

As stated in *Harvey v. Corbett, supra* (at 58):

"* * * We have only to apply the plain provisions of the statute. * * *"

2. *The contract between defendant and the union not only reserved to defendant the "right" to direct the manner of work by the contractor, but imposed upon defendant the duty to do so.*

The "other reason" stated by the majority as the basis for its holding that "the Act should not apply" is that in *Wilson v. P.G.E. Company, supra* (at 395-97), it was held that "retention" by defendant of the "*right* * * * to direct the manner in which the work is done" or "to impose safety measures" does not impose a *duty* to comply with requirements of the Act (to "use every care, device and precaution" practicable etc.) because the retention of such a *right* created no "risk

[ 1172 ]

of danger to plaintiff" and because the imposition of liability under the Act for "reservation of the *right* to impose safety measures, would defeat the very purpose the Act was designed to accomplish."

In my judgment, the facts of this case are so different as to make it improper to apply the rule of *Wilson* for at least two reasons:

(1) The contract in *Wilson* was a contract between an owner *and a contractor,* and a contract which did no more than reserve to the owner the "right to impose safety measures." In this case, however, the basis for defendant's liability is not the contract between defendant and its contractor, but the preceding and separate contract between defendant *and the union* and was a contract which did more than reserve to defendant "the *right* to impose safety measures," but imposed upon defendant the *duty* to do so.

The contract, by its terms, provides that defendant *"shall require"* its contractors to maintain previously existing working conditions, which it was conceded to include safety measures. To hold that this union, whose primary interest was to protect the workmen, negotiated, by this contract, a provision which did no more than confer upon defendant a "right" to impose such safety measures would render this contract provision completely illusory. By the terms of the Employers' Liability Act it is clear that an owner who is "responsible" for work involving risk hazard and danger is subject to the requirements of that Act, i.e., an owner who has the "duty," not merely the "right," to see that safety measures are adopted and followed. Once that duty is imposed, it is a nondelegable duty and cannot be delegated by the owner to a contractor. *Cf. Camenzind v. Freeland Furniture Co.,* 89 Or 158, 180, 174 P 139 (1918).

(2) Although not stated by the majority, a necessary element of the rationale of *Wilson* is that an owner who does no more in a contract with a contractor than to reserve a *right* to impose safety measures is

not subject to the Employers' Liability Act when he "derives *no possible pecuniary benefit* from the reservation." (252 Or at 396) Not only is that necessary element absent in this case, but the contrary appears.

It may be that an owner who includes in a contract *with a contractor* "the *right* to impose safety measures" derives "no possible pecuniary benefit" as a result. Again, however, this case is not primarily concerned with the terms of the contract between defendant and its contractor, but with the contract between defendant and the union which then represented defendant's fallers and buckers.

Obviously, defendant's primary reason for negotiating this contract provision which is the subject of this case was not its concern for the safety of the fallers and buckers, but the expected "pecuniary benefits" resulting from the subcontracting of the falling and bucking work. Having negotiated that compromise which permitted defendant to subcontract its falling and bucking and to gain thereby the resulting "pecuniary benefits," defendant then entered into a separate contract for the subcontracting of that work, which was then (according to evidence offered by the plaintiff) performed by a crew of four, without a bull buck, who in the past had been the person primarily responsible for seeing that proper safety measures were enforced, and without continuing previous safety precautions.

In my judgment, it is wholly unrealistic to say that as a result of this provision in its contract with the union, even if construed as one which did no more than "reserve the right to impose or require safety precautions," defendant "derive[d] no possible pecuniary benefit."

There is "another reason" why, in my opinion, it is improper for the majority to hold that to impose liability under the Employers' Liability Act because the retention of the "right" by the defendant to require its contractors to continue previously existing working

conditions relating to safety would be "contrary to the policy of the Act" and to cite *Wilson* in support of that proposition.

It is of interest that this proposition, as set forth in *Wilson* by the writer of this majority opinion, not only interjected a completely new theory of "nonliability" under the Employers' Liability Act, but one not supported by the citation of any decisions by this or any other court and one which was completely different from the reasons urged by the defendant upon the appeal of that case.

Of more importance, however, is the fact that there was no such contention by this defendant in this case. Plaintiff contended that *Wilson* was not controlling for much the same reasons as stated in this dissent. In response, however, defendant did not contend that *Wilson* was controlling for reasons stated by the majority, but contended only that in this case it "retained no right of control" in the agreement with its contractor and that under its contract with the union it need only require its contractor "to follow all *laws* relating to conditions of labor and its safety." Yet the majority would extend the rule of *Wilson* to an owner who not only has a "right," but a "duty" to require its contractors to continue "previously existing safety practices."

This "other reason," as stated by the majority as the basis for its decision, is pure dictum and is not necessary to support the decision by the majority. In my opinion, it is bad practice for this court to state such "other reasons" to support decisions under circumstances such as those involved in this case. We have only recently experienced the results of such a practice. *See Real Good Food Store v. First National Bank,* 276 Or 1057, 557 P2d 654 (1976).

There may be rare cases in which such a practice may be proper, such as in cases in which it appears that the trial court should be affirmed, but the parties

did not state the proper reason for doing so and there is no other proper basis for affirming the trial court. This is not such a case.

For these reasons, I believe that plaintiff's decedent was entitled to the benefits of the Employers' Liability Act and that the trial court erred in withdrawing from the jury that "count" of plaintiff's complaint. Accordingly, I must respectfully dissent.