Argued and submitted September 8, 2004, decision of Court of Appeals affirmed; judgment of circuit court reversed June 15, reconsideration denied August 15, 2006

Marilu E. BOOTHBY,
individually and as Personal Representative of
the Estate of Winston Boothby, deceased,
for the benefit of Marilu E. Boothby, surviving spouse;
Marilu E. Boothby, guardian ad litem for
Brett M. Boothby, a minor, Cheryl M. Davis, a minor,
Shayne N. Davis, a minor,
and Rodney R. Davis, Jr., a minor,
children of decedent;
Michael T. Boothby and Gloria Negron,
surviving parents of decedent,
*Petitioner on Review,*

*v.*

D.R. JOHNSON LUMBER CO.,
an Oregon corporation,
*Respondent on Review,*

*and*

RHINE EQUIPMENT COMPANY
and Barko Hydraulics, L.L.C.,
fka Barko Hydraulics, Inc.,
fka Barko Hydraulics,
*Defendants.*

(CC 9812-09070; CA A110786; SC S50142)

137 P3d 699

Meagan A. Flynn, Preston Bunnell & Stone, LLP, Portland, argued the cause and filed the brief for petitioner on review.

Peter R. Chamberlain, Bodyfelt Mount Stroup & Chamberlain, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Andrew D. Glascock.

Before Carson, Chief Justice,** and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

KISTLER, J.

** Chief Justice when case was argued.
*** Chief Justice when case was decided.

### KISTLER, J.

Plaintiff brought this action against D.R. Johnson Lumber Co. (Johnson Lumber) after plaintiff's husband died in a logging accident. Plaintiff claimed that Johnson Lumber was liable for her husband's death both under Oregon's Employer Liability Law (ELL), ORS 654.305 to 654.336, and common-law negligence. A jury returned a verdict for plaintiff on both claims, but the Court of Appeals reversed, holding that no reasonable juror could find that Johnson Lumber was responsible under either claim for the acts and omissions that led to plaintiff's husband's death. *Boothby v. D.R. Johnson Lumber Co.*, 184 Or App 138, 55 P3d 1113 (2002). We allowed plaintiff's petition for review and now affirm the Court of Appeals decision.

Because this case arises on Johnson Lumber's motion for a directed verdict, we set out the facts in the light most favorable to plaintiff. Johnson Lumber purchased the timber rights from the State of Washington on a tract of land located in that state. Johnson Lumber then contracted with Intermountain Forest Management (Intermountain) to harvest the timber. The contract between Johnson Lumber and Intermountain provided that Johnson Lumber "is interested only in the results to be achieved and, except for the timing of [logging] operations, the conduct and control of the [logging] work will lie solely with [Intermountain]."

Intermountain employed plaintiff's husband, Boothby, who worked at the logging site. At the end of the work day, Boothby and another employee, Hatt, were headed back to the crew bus and needed to get by an operating log loader. Hatt signaled the person operating the log loader, who put it into idle. Hatt continued walking toward the crew bus while Boothby stopped and knelt down. Without warning, the log loader operator began backing up. Hatt and another coworker shouted to Boothby, but he failed to get up. Boothby's coworkers tried unsuccessfully to signal the operator to stop. The log loader caught Boothby's ankle and rolled over him, causing his death. This action followed.[1]

---

[1] Although the accident took place in Washington, the trial court applied Oregon law to both claims. Neither party argues that the trial court should have applied Washington law.

At trial, plaintiff presented evidence of unsafe operations at the job site. Among other things, the jury could have found that duct tape and plastic had obscured one of the log loader's windows, limiting the operator's ability to see. Further, the log loader did not have an automatic device, such as a beeper, to signal the loader's movement, and a counterweight had blocked the operator's view. Finally, Intermountain had not provided any safety training for its employees, including the person operating the log loader.

In moving for a directed verdict, Johnson Lumber did not dispute that a reasonable juror could find that Intermountain had either maintained or operated the log loader in an unsafe fashion. Johnson Lumber argued, however, that it was not liable for Intermountain's acts and omissions. The trial court denied Johnson Lumber's motion and submitted both the ELL and the negligence claims to the jury, which returned a verdict for plaintiff on both claims. The jury found that Johnson Lumber was 60 percent at fault on the ELL claim and 67 percent at fault on the negligence claim. The jury also found that plaintiff suffered $900,000 in economic damages and $3,125,000 in noneconomic damages; the trial court reduced those amounts to take into account both the jury's allocation of fault and a cap on noneconomic damages.

Plaintiff appealed and Johnson Lumber cross-appealed from the resulting judgment. Reaching only the issues raised by Johnson Lumber's cross-appeal, the Court of Appeals reversed. It held that Johnson Lumber was not liable under the ELL because there was no evidence that it had a right to control the operation of the log loader or that it was engaged in a common enterprise with Intermountain. *Boothby*, 184 Or App at 155. On plaintiff's negligence claim, the court held that, on the facts of the case, Intermountain's status as an independent contractor shielded Johnson Lumber from liability for Boothby's injuries. *Id.* at 161. Having concluded that the trial court should have granted Johnson Lumber's directed verdict motion, the Court of Appeals reversed the trial court's judgment. *Id.* at 162.

On review, plaintiff argues that the Court of Appeals erred in reversing the trial court's rulings on both her ELL

and her negligence claims. We begin with the ELL.[2] The ELL "imposes a heightened statutory standard of care on a person or entity who either is in charge of, or responsible for, any work involving risk or danger." *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003). ORS 654.305 provides:

> "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance [*sic*] and devices."

In this case, the jury reasonably could find that the operation of the log loader without adequate safety devices was "work involving a risk or danger" for which the ELL required the use of "every device, care and precaution that is practicable to use for the protection and safety of life and limb." *See Woodbury*, 335 Or at 161 (holding that statutory phrase "risk or danger" refers to "conditions of the work that create the possibility that a worker will suffer harm").[3] More specifically, the jury could find that operating the log loader without sufficient safety procedures or devices violated the ELL. The issue on which this case turns is whether the jury also could find that Johnson Lumber was responsible for the method or manner in which Intermountain operated the log loader.

On that issue, the ELL imposes liability on "all owners, contractors or subcontractors and other persons having charge of, or responsibility for," work involving a risk or danger. ORS 654.305. Interpreting the quoted wording, this court has held that, in addition to a worker's direct employer, liability under the ELL

---

[2] We review the denial of a motion for a directed verdict for any evidence to support the jury's verdict. *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003).

[3] Plaintiff identifies the "work involving a risk or danger" as the operation of the log loader without adequate safety devices while Johnson Lumber identifies it as the operation of the log loader. The difference is not material to our decision.

"can be imposed on a person or entity who (1) is engaged with the plaintiff's direct employer in a 'common enterprise'; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk-producing activity is performed."

*Woodbury*, 335 Or at 160 (footnote omitted; summarizing *Wilson v. P.G.E. Company*, 252 Or 385, 391-92, 448 P2d 562 (1968)). Here, Johnson Lumber was not Boothby's direct employer, and plaintiff does not contend that Johnson Lumber actually controlled the manner or method in which Intermountain operated the log loader. Moreover, plaintiff does not argue on review that Johnson Lumber and Intermountain were engaged in a common enterprise.[4] The question under the ELL accordingly reduces to whether a reasonable juror could find that Johnson Lumber "retain[ed] the right to control" the manner or method in which Intermountain operated the log loader.

In order to establish that Johnson Lumber retained a *right* to control how Intermountain operated the log loader, plaintiff must identify some source of legal authority for that perceived right. *See Wilson*, 252 Or at 392-97 (looking to the defendant's contractual right to control how contractor's employees performed work to determine the defendant's retained right to control). In analyzing that issue, we begin with the contract between Johnson Lumber and Intermountain. If the contract does not resolve the matter in plaintiff's favor, we then turn to the other evidence that plaintiff asserts establishes that Johnson Lumber retained the right to control Intermountain's operation of the log loader.

Johnson Lumber and Intermountain entered into a logging agreement on March 11, 1998. In that agreement, Johnson Lumber reserved only "the right to control times of operation and log flow if conditions so warrant." Consistently with that limited reservation of the right to control, the agreement provides that "[Johnson Lumber] is interested

---

[4] Plaintiff refers to the "common enterprise" test once in passing in her brief on the merits but makes no argument in that brief challenging the Court of Appeals' resolution of her common enterprise theory.

only in the results to be achieved and, except for the timing of operations, the conduct and control of the work will lie solely with [Intermountain]." Finally, after repeating that "[Johnson Lumber] shall have the right, at its option, to control the timing of [Intermountain's] performance hereunder," the agreement provides:

> "[Intermountain], at [Intermountain's] expense, shall be solely responsible for providing and maintaining all supplies and equipment[;[5]] safety, fire prevention and protection, technique, and operations shall be conducted with due care and in a workmanlike manner consistent with the highest standard in the trade and [Intermountain] shall refrain [sic] employees or agents during said operations."

The logging agreement between Johnson Lumber and Intermountain does not support plaintiff's contention that Johnson Lumber retained the right to control Intermountain's operation of the log loader. The agreement provides that Intermountain is "solely responsible for providing and maintaining all supplies and equipment." The agreement also states unequivocally that, except for the timing of the operations, "the conduct and control of the work will lie solely with [Intermountain]." Under the unambiguous terms of the logging agreement, Johnson Lumber retained no contractual right to control how Intermountain maintained or operated the log loader.

Plaintiff notes, however, that one provision in the logging agreement between Johnson Lumber and Intermountain states that Intermountain "will be responsible for determining the on-site requirements of the Timber Sale Contract [between Johnson Lumber and the State of Washington], and for performing them in a workmanlike manner to the satisfaction of * * * D.R. Johnson Lumber Company." Although plaintiff relies on that provision as evidence that Johnson Lumber retained the right to control how Intermountain maintained the logging equipment, we cannot

---

[5] The agreement contains a comma rather than a semicolon between the words "equipment" and "safety," leaving open the question whether "safety" is an object of the gerunds "providing and maintaining" or a subject of the verb "shall be conducted." For the purposes of reviewing the ruling on defendant's directed verdict motion, we have resolved that ambiguity in plaintiff's favor and inserted a semicolon in place of the comma.

read one provision in the contract in isolation but must consider all the terms of the contract in determining the provision's meaning. *See Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (stating proposition); *Wilson*, 252 Or at 397 (same; treating meaning of contract as question of law for court). The provision on which plaintiff relies is a general provision that neither negates nor calls into question the specific provisions of the contract giving Intermountain sole responsibility for "the conduct and control of the work."

Plaintiff advances a different argument. She contends that, despite the unambiguous terms of the logging agreement, other evidence permitted the jury to find that Johnson Lumber retained the right to control the operation of the log loader. Plaintiff relies primarily on the timber sale contract between Johnson Lumber and the State of Washington. In that contract, the state agreed to sell and Johnson Lumber agreed to purchase, cut, and remove all the timber on a 47-acre parcel. The contract allocated various risks between the parties, provided that Johnson Lumber would *"comply with all applicable statutes, regulations, and laws,"* and imposed specific duties on Johnson Lumber, such as preserving "legal land subdivision survey corners." (Emphasis added.) Finally, the contract provided:

> "No rights or interest in this contract shall be assigned by Purchaser [Johnson Lumber] without prior written permission of the State. Any attempted assignment shall be void and ineffective for all purposes unless made in conformity with this paragraph. *Purchaser may perform any duty through a delegate, but Purchaser is not thereby relieved of any duty to perform or any liability.* Any assignee or delegate shall be bound by the terms of the contract in the same manner as the Purchaser."

(Emphasis added.)

Focusing on the emphasized sentences, plaintiff argues that the jury could find that those sentences "expressed Johnson Lumber's intent to accept charge of and responsibility for whether loggers on the site would be endangered by unsafe practices and conditions." Plaintiff's interpretation is at odds with the plain wording of the contract. The second emphasized sentence, on which plaintiff relies,

does not require Johnson Lumber to retain the right to control the method or manner in which its "delegate" carries out the terms of the timber sale agreement. It simply makes clear that Johnson Lumber remains liable to the State of Washington if its delegate breaches those terms.

■      Plaintiff also relies on the testimony of her expert witness, who testified that the practice in the industry is for a timber purchaser to retain the right to control safety practices on the job site. Industry practice, however, cannot override the unambiguous terms of the logging agreement between Johnson Lumber and Intermountain. As this court has recognized,

> "[t]he rule is well settled that when a custom or usage is inconsistent with the plain and unambiguous terms of a contract, it cannot be interposed to contradict or qualify its provisions, for in such a case, as here, the terms of the contract are evidence of the intentions of the parties to avoid the effect of such usage or custom."

*Bliss v. Southern Pacific Co. et al.*, 212 Or 634, 640, 321 P2d 324 (1958). Given the unambiguous terms of the logging agreement between Johnson Lumber and Intermountain, the jury could not reasonably have relied on the expert's testimony to find that Johnson Lumber retained a right to control Intermountain's operation of the log loader.

■      Plaintiff advances a final argument under the ELL. She contends that the ELL placed a nondelegable duty on Johnson Lumber to ensure the safety of Intermountain's employees. Plaintiff's argument is at odds with the text of the ELL, as this court has construed it. It also is at odds with a long line of cases holding that the fact that a person hires an independent contractor to do work involving a risk or danger is not sufficient, in and of itself, to impose liability under the ELL.

The text of the ELL imposes a duty on only those persons "having charge of, or responsibility for," work involving a risk or danger. ORS 654.305. This court has explained that, in addition to direct employers, those words impose a duty on (1) persons who actually exercise control over the work involving a risk or danger, (2) persons who retain the

right to control that work, and (3) persons engaged in a common enterprise. *Woodbury*, 335 Or at 160. If, as we hold, Johnson Lumber did not fall into any of those categories, then the ELL imposed no duty on it, nondelegable or otherwise, and the premise underlying plaintiff's argument is mistaken.

That conclusion is consistent with a long line of cases interpreting the ELL. Since 1913, this court has held that the fact that an owner engages an independent contractor to perform work involving a risk or danger does not, in and of itself, impose a duty under the ELL on the owner. *See Wienke v. Ochoco Lumber Co.*, 276 Or 1159, 1164-65, 558 P2d 319 (1976); *Browning v. Terminal Ice Co.*, 227 Or 36, 42, 360 P2d 630 (1961); *Lawton v. Morgan, Fliedner & Boyce*, 66 Or 292, 298-300, 131 P 314, *on reh'g*, 134 P 1037 (1913) (all illustrating proposition). As the court held in *Lawton* and reaffirmed in *Wienke*,

> "It is not necessary that plaintiffs' decedent have been directly employed by defendant [in order to impose liability under the ELL on the defendant]. *It is not in itself sufficient, however, that plaintiffs' decedent have been employed by a contractor of defendant.*"

*Wienke*, 276 Or at 1164 (citations omitted; emphasis added). Under the text of the ELL and in light of the contractual relationships in this case, Johnson Lumber had no duty under the ELL. The Court of Appeals correctly held that there was no evidence from which a reasonable juror could find that Johnson Lumber was liable under the ELL for Intermountain's operation of the log loader.

■     As noted, plaintiff also argues that the Court of Appeals erred in holding that Johnson Lumber was entitled to a directed verdict on her common-law negligence claim. Plaintiff asserts that there was evidence that Johnson Lumber had failed to address unsafe conditions at the job site and that its failure to do so created a foreseeable risk of the kind of harm that befell Boothby. In making that argument, plaintiff does not identify any limit on the duty that she would impose on Johnson Lumber to prevent foreseeable

harm. Rather, her argument appears to turn on the proposition that every person who fails to take reasonable steps to prevent any foreseeable harm is liable in negligence.

■       This court's negligence cases do not sweep that broadly. Rather, as the court explained in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987),

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether the conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

This court made clear in *Fazzolari* that liability in negligence does not extend to every failure to prevent a foreseeable injury: "[A] status, a relationship, or a particular standard of conduct" may "creat[e], defin[e], or *limi[t]*" a defendant's duty to act. *Id.* (emphasis added).

Here, Johnson Lumber invokes Intermountain's status as a limiting principle. As Johnson Lumber notes, even if the harm resulting from Intermountain's operation of the log loader was foreseeable, Johnson Lumber neither had any right to control nor exercised any actual control over the way that Intermountain operated the log loader. Not only does Johnson Lumber's lack of control over the way that Intermountain operated the log loader negate any duty under the ELL, but it also precludes, as a general rule, plaintiff from holding Johnson Lumber liable for Intermountain's negligence. *See Warner v. Synnes et al.*, 114 Or 451, 458, 230 P 362 (1924), *on reh'g*, 235 P 305 (1925) (recognizing that, as a general rule, a person who hires an independent contractor is not liable to the contractor's employees for injuries that they sustain while performing contracted work). Consistently with that principle, this court has held that a person's liability in negligence for work involving a risk or danger is generally no more extensive than his or her liability for that work under the ELL. *Howard v. Foster & Kleiser Co.*, 217 Or 516, 533, 332 P2d 621 (1958), *on reh'g*, 342 P2d 780 (1959) (holding that, "[i]f recovery cannot be had in this case under

the Employer's Liability Law, it follows that none is available under the common-law rule of due care").

To be sure, the general rule that an owner ordinarily is not liable in negligence for its independent contractor's acts and omissions is subject to numerous exceptions. *See* Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, 5 *The Law of Torts* § 26.11 (2d ed 1986) (noting that proposition). Citing *Yowell v. General Tire & Rubber*, 260 Or 319, 490 P2d 145 (1971), plaintiff argues that this case comes within one of those exceptions. We conclude, however, that the exception that this court recognized in *Yowell* does not apply here.

In *Yowell*, the court held that, in certain circumstances, a person who provides an unsafe work site may be liable to an employee of an independent contractor for injuries that the employee sustains on the work site. *Id.* at 322-26. Specifically, the court recognized that a business that hired an independent contractor to repair a sign could be liable, in certain circumstances, to the contractor's employee for injuries that he sustained as a result of a defect in the business premises.

In this case, Johnson Lumber provided the tract of land that Intermountain logged. There is no evidence, however, that any defect in that tract led to the accident that resulted in Boothby's death. Because the basis for finding a duty to an independent contractor's employee that the court recognized in *Yowell* is not present here, we hold that Intermountain's status as an independent contractor limited Johnson Lumber's liability in negligence to Intermountain's employees. The Court of Appeals correctly held that, on this record, no reasonable juror could find that Johnson Lumber was liable either in common-law negligence or under the ELL for Boothby's death.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed.